### DURANT v. DUCHESSE D'AUXY et al.

</div>

1. Where a mortgage upon an interest in realty described that interest by setting forth in full a copy of a deed whereby the realty had, as a whole, been conveyed in fee simple to divers persons, including the mortgagor, and where the mortgagee instituted against the mortgagor and the maker of the deed an equitable proceeding to foreclose the mortgage and also to reform the deed so as to make it convey to the mortgagor an interest in the realty different from that expressed therein, a judgment rendered in such proceeding, foreclosing the mortgage and reforming the deed as prayed, incidentally reformed the mortgage itself and rendered the fore-closure operative upon the mortgagor's interest as fixed and defined in such judgment. A judgment thus rendered bound all the parties to the case, and after its rendition there could be no other or further foreclosure of the mortgage as to any interest in the realty which the mortgagor had at the time of executing the mortgage.

2. Such a mortgage, though it purported to create in the mortgagee's favor a lien upon any interest in the described realty which the mortgagor might acquire after the time of its execution, was not, under the law now embodied in section 2723 of the Civil Code, valid as to any such after-acquired interest.

3. An equitable petition in the nature of a bill of review will not lie for the purpose of opening and reforming a judgment, in order merely to make the same binding upon a person who was not a party to the proceeding in which that judgment was rendered, when there is no error apparent on the face of the judgment, and when such petition is not predicated

upon any new fact, or facts, entitling the plaintiff to the relief sought. The more especially is this true when it is apparent from the allegations of the petition that there was no good reason for failing to make such person a party in the first instance.

Argued February 7, — Decided May 29, 1899.

Equitable petition.    Before Judge Falligant.    Chatham superior court.    April 27, 1898.

*Mercer & Mercer*, for plaintiff in error.
*Lester & Ravenel*, contra.

LUMPKIN, P J.    An equitable petition was filed in the superior court of Chatham county by Pauline A. Durant against the Duchesse d'Auxy, the Countess d'Auxy and others.    Its allegations were, in substance, as follows:    On the 2d day of July, 1866, Gazaway B. Lamar executed a deed conveying to G. D. Lamar, in trust for himself and his three sisters, daughters of the grantor, certain realty in the city of Savannah. These sisters were Charlotte A. Soutter, then the wife of Robert Soutter Jr., Annie C. Lamar, and Harriet C. Lamar.    The deed declared that the trustee therein named was to have and to hold the shares of these three in the property free from the debts of their husbands, and for the sole use, benefit, and advantage of themselves "and their child or children."    At the date of the execution of this deed Mrs. Soutter had one living child, a son named James F. Soutter.    On May 31, 1869, the superior court of Chatham county, upon a bill filed by the trustee and his sisters, granted a decree directing that the property above referred to be sold for $50,000 and the proceeds reinvested on the same uses and trusts as set forth in the deed of Gazaway B. Lamar.    A sale was subsequently made, and with the proceeds thereof the trustees, on June 20, 1870, purchased from the National Bank of the Republic, of New York, certain realty in Savannah known as "Lamar's wharf."    In the deed from the bank to the trustee it was recited that he was to have and to hold "one equal undivided fourth part [of the property conveyed] in trust for the sole and separate use of his sister Mrs. Charlotte Soutter, wife of Robert Soutter Junior, for and during the term of her natural life, free from the debts, contracts, and control of her present or any future husband, and from and

after her death then to, for, and amongst the child or children of the said Charlotte Soutter who may be living at the time of her death, in equal proportions, share and share alike, as tenants in common." On the 1st day of June, 1887, Mrs. Soutter, whose first husband had died and who by her intermarriage with the Duke d'Auxy had become the Duchesse d'Auxy, borrowed from petitioner $5,475, and for the same executed a bond the payment of which was secured by a mortgage upon the borrower's interest in the Lamar wharf property. This interest was described by setting forth in the mortgage a full copy of the deed from the bank to G. D. Lamar, trustee. The mortgage also purported to create a lien upon all the right, title and interest, at law or in equity, which the said Charlotte A. "then had or might thereafter acquire in the said Lamar wharf property."

At the March term, 1889, of the Supreme Court of Georgia, that tribunal, in construing the deed executed by Gazaway B. Lamar in 1866, held that "inasmuch as the said Charlotte A. had one child, to wit James F. Soutter, living at the date of said deed, the said Charlotte A. took an estate in common with said child, and the daughters [of the grantor therein named] who had no child or children took an estate severally to themselves in fee simple." By reason of this decision, petitioner's "supposed security for the debt of the said Charlotte A. was cut down just one-half, [and] after said decision the said Charlotte A. was paid and received only one-eighth part of the net rents and profits of said Lamar wharf property, and her son, the said James F. Soutter, the other eighth." The said Charlotte A. having made default in paying, after its maturity, the debt secured by the mortgage, petitioner was compelled to take legal measures to collect the same, and on December 26, 1891, she brought a suit for this purpose, and on June 30, 1892, a decree was rendered in her favor against the said Charlotte A. for $6,347.56, besides interest; but "in accordance with said decision of the Supreme Court of Georgia, the foreclosure of said mortgage was limited to, and the equity of redemption of the said Charlotte A. barred only as to, a specific one undivided eighth part in said property, then supposed, by

mistake, to be her sole and entire interest in the same, and the said specific one-eighth interest was ordered to be sold, and no provision was made for the seizure or disposal by execution or otherwise of any further or additional interest the said Charlotte A. might then have or thereafter acquire in accordance with the provisions of her said mortgage in the said mortgaged premises." By the decree in the case last mentioned, the National Bank of the Republic of New York was ordered to reform its deed of June 20, 1870, to G. D. Lamar, trustee, so as to make the trusts therein expressed correspond and agree with those created by the original trust deed of Gazaway B. Lamar and accord with the decree requiring the proceeds of sale of the original property to be reinvested upon the same uses and trusts. Execution was issued upon said decree of foreclosure and the one-eighth undivided interest of the said Charlotte A. in the Lamar wharf property was sold by the sheriff and bought by petitioner at the price of $3,000, leaving a large balance still due upon the mortgage. Since the date of the sheriff's deed, petitioner has been in possession of an undivided eighth interest in said property, and has received the net rents and profits thereof.

James F. Soutter, the only child of the said Charlotte A. living at the time of the making of the original trust deed by Gazaway B. Lamar, asserted his equal undivided one-eighth interest in the substituted property, and collected and received his one-eighth part of the rents and profits arising therefrom up to and including the quarter ending January 1, 1894; so that petitioner had every reason to believe, and did believe, that he claimed and would continue to claim in accordance with the decision of the Supreme Court an undivided one-eighth interest in the substituted trust property, leaving his mother only one-eighth therein subject to petitioner's mortgage; and laboring under the mistake so caused, petitioner levied on and sold one-eighth only. Yet, notwithstanding the receipt by James F. Soutter of his portion of the rents and profits of the wharf property, as alleged, he brought an action of ejectment returnable to the March term, 1892, of Chatham superior court, against Eugene Kelly, the purchaser of the

original trust property, to recover an undivided eighth thereof. This action was based upon the ground that James F. Soutter was not a party to the proceeding to sell that property and re-invest its proceeds, and therefore not bound by the decree therein rendered. On the 8th of September, 1893, a verdict in favor of James F. Soutter against Kelly was returned for an undivided eighth of the property conveyed in 1866 by Gazaway B. Lamar to G. D. Lamar, trustee, and for mesne profits. Subsequently Kelly paid to James F. Soutter $5,500, "which included not only the value of the interest recovered by him, but his claims for mesne profits during said adverse holding." Petitioner contends that by bringing this suit and receiving this money, James F. Soutter became completely estopped and barred from asserting any interest whatever in the substituted trust property, or in the rents and profits aris-ing from the same, and that his undivided one-eighth interest therein lapsed and became the property, either of his mother, the said Charlotte A., or of all the owners of the wharf prop-erty under the deed from the New York bank to G. D. Lamar, trustee, in the proportions of their original ownership; and that in either event, whatever fractional interest in the prop-erty thus went to the said Charlotte A. at once became subject to the lien of petitioner's mortgage, "which expressly pro-vided that said mortgage should include all future-acquired property."

By the foreclosure proceeding filed by petitioner she "under-took to reform the said deed made by the National Bank of the Republic, of New York, so as to express the trusts declared in the original deed of Gazaway B. Lamar, and . . a judg-ment and decree to said effect was taken which was binding upon the said Charlotte A., Duchesse d'Auxy, she having been duly served; but petitioner shows that said Charlotte A. then had, and still has, two living children, the said James F. Sout-ter, a son by her former marriage, and a female minor child by her present marriage, neither of whom, as petitioner is ad-vised, was made a party to said proceeding or served." The name of this daughter is Ganie Lucille Belynde, Countess d'Auxy. Until the court shall interpret the trust expressed in

the deed from the bank to G. D. Lamar, trustee, and shall decide whether the Countess can claim anything under it, or whether it was limited to the child of the Soutter marriage, it is within the power of James F. Soutter or of the Countess, "if not served and bound by the judgment of the court, upon the death of the said Charlotte A. to claim as tenants in remainder in fee, and seek to oust your petitioner and to insist that at said judicial sale she acquired only a life-estate in one-eighth interest, which terminates at the death of said Charlotte A." After James F. Soutter made his final election and took his entire interest in the original trust property, he received no further rents and profits from the substituted trust property. The amount of these rents and profits, now several hundred dollars, will be increased by future quarterly accretions, and the same can not be divided and distributed until the court shall settle the title to the property and determine who is entitled to receive the rents and profits arising therefrom.

The prayers of the petition were: (1) that by a judgment of the court the interest the said Charlotte A. now has in the substituted trust property be fixed and ascertained, "and that the judgment obtained by petitioner, as aforesaid, on the foreclosure of her mortgage may be levied upon such interest, or that a new and supplemental decree may be granted, if necessary, and so levied, and that petitioner may collect the entire balance of principal, interest and costs still due her on her said bond and mortgage"; (2) "that the court will ascertain and determine what interest, if any, the said James F. Soutter now has in said substituted property, either as present tenant in common or in remainder, and in the accrued and accruing rents and profits of the said undivided one-eighth thereof"; (3) "that the reformation of the said deed of the National Bank of the Republic, of New York, may be confirmed and made binding upon the said James F. Soutter and the infant daughter of the said Charlotte A.,  .   .  and upon all the parties interested"; and (4) for general relief. The petition named as parties defendant the Duchesse d'Auxy and her two children; Harriet C. Jones (formerly Harriet C. Lamar) and her three minor children; and also the children of Annie C. Minor

(formerly Annie C. Lamar), deceased. By amendment, Robert Soutter, of Massachusetts, a son of the Duchesse d'Auxy, was made a party, it being alleged that his "existence and name were not discovered until after the said petition was filed." It was also alleged in this amendment that G. D. Lamar, the trustee, had died and that no other trustee had been appointed.

To the petition as thus amended the Duchess and the Countess filed demurrers raising the questions dealt with in the discussion which follows. The court thereupon entered a judgment dismissing the petition as to these parties defendant, and to this judgment the petitioner excepted.

From the foregoing it will be seen that the plaintiff's petition is one in the nature of a bill of review. Relatively to the Duchess, its purpose apparently is to so enlarge the scope of the decree obtained by the plaintiff in her former proceeding against the Duchess and the New York bank as to extend the foreclosure of the mortgage over an additional interest alleged to have been acquired by the Duchess in the Lamar wharf property. As to the Countess, the object of the present petition is to make binding upon her the former decree, in so far as it relates to the reformation of the deed made by the bank to G. D. Lamar, trustee. As the other defendants did not, so far as we are informed, demur to the petition, and, for aught that appears, it is still, for all proper purposes, pending as to them, we are necessarily limited to a determination of the questions embraced in the inquiry: Is the plaintiff's petition maintainable for the purpose of obtaining any of the relief for which she prayed against the Duchess and the Countess? Our conclusion is that it is not, and, accordingly, that the judgment excepted to was right. This, we think, will appear from an examination and consideration of the plaintiff's prayers in connection with the facts alleged. Before undertaking to deal with these specifically, we will first dispose of a preliminary matter as to which there seems to be no dispute, but a statement of which naturally leads up to a discussion of the points in controversy.

1. It will have been observed that Mrs. Durant made the National Bank of the Republic a party defendant to the proceeding which she instituted for the purpose of foreclosing her

mortgage, and that upon her own prayer the deed which this bank had made to G. D. Lamar, trustee, was so reformed as to make it recite that the interest of the Duchess in the property thereby conveyed was an undivided one-eighth in fee simple. As the mortgage described the mortgagor's interest in this property by setting forth in full a copy of this deed, it necessarily resulted from the reformation of the deed that the interest covered by the mortgage at the time of its execution was an undivided eighth in fee of the premises conveyed by the bank. The court, at the instance of Mrs. Durant, decreed that this was so, and she accordingly had a judgment of foreclosure binding this eighth, and subsequently caused the same to be sold under that judgment, becoming herself the purchaser. It appears, then, that the interest which the Duchess held and owned in the Lamar wharf property at the date of the mortgage was ascertained and fixed by a solemn decree which Mrs. Durant herself invoked, and which, as her present petition correctly alleges, is conclusive upon the Duchess. It is also conclusive upon the bank, from which the title of the Duchess was derived. Accordingly, we may at the outset take it as settled that the interest which the Duchess had in the Lamar wharf property at the time she gave the mortgage and up to the date of the judgment of foreclosure has, as between her and the plaintiff, been finally disposed of, and that there can be no further foreclosure as to it.

2. It therefore seems certain that, by the first prayer of the petition, the plaintiff seeks to subject to her mortgage some interest in the property acquired by the Duchess after the termination of the foreclosure proceeding. In praying that by a judgment of the court in the present case the interest the Duchess "now has" in the property be fixed and ascertained, and that the original judgment of foreclosure "may be levied upon such interest," the plaintiff was manifestly endeavoring to extend the operation of that judgment to an alleged interest of the Duchess in the property other than that which the sheriff had already sold. But whether the petition, relatively to this matter, be treated as one in the nature of a bill of review or as a new and independent foreclosure proceeding, we

do not think it is, for the purpose just indicated, maintainable. Granting, for the sake of the argument, that the Duchess did get a new and additional interest in the property, the lien of Mrs. Durant's mortgage did not, under our law, attach thereto; and this is so, although the Duchess, in executing this instrument, did undertake to create a lien, not only upon all the right, title and interest which she had in the Lamar wharf property on the day the mortgage was given, but also on any interest therein which she "might thereafter acquire." The law now embodied in section 2723 of the Civil Code, and which was of force when this mortgage was executed, is, as to this matter, definite and conclusive. This section, with a single exception not now material, limits the subject-matter upon which a mortgage can lawfully operate to "property in possession, or to which the mortgagor has the right of possession at the time" the instrument is executed. Accordingly, this court, in *Georgia Southern Railway Co.* v. *Barton,* 101 *Ga.* 469, held that under this law "neither a corporation nor a natural person has the right to mortgage property which may be acquired after the execution of the mortgage." This ruling was followed in *Lubroline Oil Co.* v. *Athens Savings Bank,* 104 *Ga.* 376.

What is said above disposes of the second as well as the first prayer of the petition; for it follows as a necessary conclusion that it can be a matter of no concern to Mrs. Durant what may have resulted from James F. Soutter's alleged abandonment of all interest in the Lamar wharf property, either as respects the question of title or income. Her allegations point strongly to the inference that he ratified the sale by G. D. Lamar, trustee, of the property originally conveyed to him by Gazaway B. Lamar, and the investment of the proceeds in the Lamar wharf property. If what James F. Soutter did amounted to a ratification of the trustee's action, then it would seem that Soutter still has title to an eighth of the substituted property, notwithstanding his recovery from Kelly, based upon the theory that he (Soutter) still owned an interest in the original trust property. But whether he has or has not an interest in the Lamar wharf property, or in the rents thereof already accrued or to accrue hereafter, we are not now called upon to decide. Nor, if

he once had an interest in this property and the income aris-
ing therefrom, and has parted with the same, is it our present
duty to determine in whom the title to that interest now vests.
For the reason above stated, the lien of Mrs. Durant's mort-
gage does not attach, and can not attach, thereto; and this
being so, we would be obviously going outside of the record
before us should we undertake to deal with the questions just
indicated.   Indeed, were we disposed to do so, any decision
which we might render as to these matters would not be
binding upon James F. Soutter, he not being a party to the
present writ of error.

3. The only remaining question is, whether or not the plain-
tiff was entitled to maintain her petition for the purpose of
having the reformation of the deed made by the New York
bank "confirmed and made binding upon" the Countess.  We
thus limit the inquiry, for though the prayer for relief in this
connection is directed against James F. Soutter by name and
is broad enough in its terms to include Robert Soutter, who
was by amendment made a party defendant, neither of these
two are parties to the present writ of error ; nor does the prayer
for general relief, upon the record as it now stands, present any
question for our determination.   The office of a bill of review
is "to reverse or modify a decree that has been signed and en-
rolled, for error in law upon the face of such decree, or on ac-
count of new facts discovered since publication was passed in the
original cause, and which could not, by the exercise of due dili-
gence, have been discovered or used before the decree was made."
3 Enc. Pl. & Pr. 570, 571.    And see Ibid. 580–583.    "A bill
of review is a bill in the nature of a writ of error, intended to
procure the examination and consequent reversal, alteration,
or explanation of a final decree in equity which has been signed
and enrolled."  "Besides bills of review proper, there are other
species of bills intended for a similar purpose, but appropriate to
different circumstances."   "A supplemental bill in the nature
of a bill of review is one which is brought before the decree is
enrolled."    2 Am. & Eng. Enc. L. 262, 263.   As original and
supplemental bills in the nature of bills of review resemble
each other both in object and in form, there are many princi-

ples applicable to both, one of which is that when predicated upon new matter, it should always appear that the same could not sooner have been discovered. See page 269 of volume just cited.

It is obvious that in so far as the present petition relates to the relief sought against the Countess d'Auxy, it is not predicated upon error apparent upon the face of the record of the former proceeding for reformation and foreclosure. That proceeding was good so far as it went, and the parties before the court were bound by all the adjudications therein made. It also seems perfectly clear that the petition now in hand is not founded upon any new fact. It distinctly alleges that the Countess was in existence when the judgment obtained by Mrs. Durant against the Duchess and the New York bank was rendered. If Mrs. Durant did not then actually know there was such a person in life as this daughter of the Duchess, she could easily have learned the truth in this regard, and certainly all the facts upon which the Countess might, rightfully or otherwise, set up a claim to an interest in the Lamar wharf property were exactly the same in 1892 when the deed was reformed and the mortgage foreclosed, as in 1896 when the present petition was filed. Mrs. Durant either knew these facts or could without difficulty have ascertained them. Indeed, she does not allege ignorance of the existence of the Countess or of any fact essential to obtaining against the latter the relief now sought, of which advantage might not have been taken in the first instance. So far as it relates to the Countess, the petition now before us is simply an attempt to enlarge the scope of the former judgment by making it operate upon and bind her, without alleging any reason or excuse for failing to have her before the court when that judgment was obtained. Ought a court of equity to entertain a petition having such an object? Should a person with all the facts entitling him to equitable relief at his command and all the parties against whom he should seek that relief within his reach, after deliberately selecting such facts and such parties only as he deemed appropriate and after getting exactly such a judgment as he desired, be permitted to again bring the same matter before

the court without at least attempting to show why he had not in the former proceeding taken the proper steps to fully accomplish the end in view? "It is the great object of courts of equity to put an end to litigation, and to settle if possible in a single suit the rights of all parties interested or affected by the subject-matter in controversy. Hence the general rule in equity is, that all persons are to be made parties who are either legally or equitably interested in the subject-matter and result of the suit, however numerous they may be, if they are within the jurisdiction, and it is, in a general sense, practicable so to do." 2 Story's Equity Jurisprudence (13th ed.), §1526. There are, as the eminent author from whom we quote observes, exceptions to this rule; but we are quite sure this case should not be regarded as one of them. The familiar maxim "vigilantibus non dormientibus acquitas subvenit" applies here. "Nothing can call forth [a court of equity] into activity but conscience, good faith, and reasonable diligence; where these are wanting the court is passive and does nothing. Laches and neglect are always discountenanced." Bispham's Eq. § 39; 12 Am. & Eng. Enc. L. 534.

Our ruling upon the point now under discussion is supported by the principle laid down in *Smith* v. *Hornsby*, 70 *Ga.* 552, and *Murphy* v. *Savannah*, 73 *Ga.* 263. The case of *Gunn* v. *Gunn*, 95 *Ga.* 439, affords an illustration of a well-brought equitable petition the purpose of which was, not to obtain any new or independent relief or affect new parties, but to make certain, as between the parties thereto, an existing judgment by rendering it operative upon property of which it undertook to dispose but which it did not sufficiently describe. As an instance on the other line, see the later case of *Gunn* v. *Byrom*, 107 *Ga.* 147, in which there was an attempt to reopen a judgment previously rendered in an equitable case, so as to enable the plaintiff to charge the defendant with items of indebtedness which ought to have been included in that judgment, and in which it was held that this could not be done without showing that the plaintiff had no knowledge of the existence of such items before the judgment was rendered and could not have obtained such knowledge by the exercise of ordinary dili-

gence. We cite below a few of the many recent cases tending to show the reluctance with which courts of equity reopen or interfere with final decrees. *Conquest* v. *National Bank of Brunswick*, 97 *Ga.* 500; Diamond Co. *v.* Rarig Co. (Va.) 25 S. E. Rep. 894; Helms *v.* Riser (Tenn.), 39 S. W. Rep. 718; Mc-Millan *v.* Wooley (Idaho), 51 Pac. Rep. 1029; Manufacturers Paper Co. *v.* Lindblom, 68 Ill. App. 539. In the case last cited, Shepard, P. J., after remarking that considerable argument had been expended upon the question whether the bill then under consideration was a bill of review or one in the nature of a bill of review, and that, once properly in court, its purpose could be considered "irrespective of whether, in strictness, it be, in name, one kind or the other, or partaking of both," added: "In this country, it is a matter of little consequence what a bill is called." See pages 542, 543. This being unquestionably true in Georgia, it is really immaterial whether we have properly classified Mrs. Durant's petition or not; for if, upon the general principles of equity jurisprudence, it is not, as to the defendants in error, maintainable (and as to this we are free from doubt), the judgment sustaining their demurrer was right. *Judgment affirmed. All the Justices concurring.*