## PEEPLES v. TRUST CO. OF GEORGIA.

### In re GEORGIA STEEL CO.

(Circuit Court of Appeals, Fifth Circuit. March 24, 1919.)

#### No. 3323.

RAILROADS ⬨⇒167—MORTGAGES—CONSTRUCTION—PROPERTY INCLUDED.

A mortgage covering certain realty, railroad rolling stock, and other personalty, and all property, whether real or personal, constituting additions or betterments to the mortgaged property, includes after-acquired locomotives, steam shovels, etc., used upon the premises.

Appeal from the District Court of the United States for the Northern District of Georgia; William T. Newman, Judge.

In the matter of the Georgia Steel Company, bankrupt. Petition by the Trust Company of Georgia, trustee for the bondholders of the Georgia Steel Company, against Oscar T. Peeples, trustee for Georgia Steel Company, bankrupt. Decree for petitioner, and the bankruptcy trustee appeals. Affirmed.

See, also, 248 Fed. 886, 160 C. C. A. 644; 250 Fed. 438, 162 C. C. A. 508.

J. B. Sizer, of Chattanooga, Tenn. (Sizer, Chambliss & Chambliss, of Chattanooga, Tenn., on the brief), for appellant.

Daniel W. Rountree and Clifford L. Anderson, both of Atlanta, Ga., for appellee.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. By the decree appealed from it was decided that certain movable and detached articles of personal property, which were acquired by the Georgia Steel Company after it executed a mortgage or deed of trust to the appellee Trust Company of Georgia, were embraced in that conveyance and were subject to be sold under a foreclosure of it. The correctness or incorrectness of

⬨⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that ruling is the sole question presented for decision. The instrument was made to secure bonds issued by the Georgia Steel Company. The property intended to be covered was set out under three heads, designated, respectively, I, II, III. Under head or subdivision I are described lands, mineral rights in land, timber, mud and water privileges, and railroad rights of way. Immediately succeeding the particular descriptions set out under that head are the following provisions:

"Also all real property of every character and description, together with all and singular the improvements thereon, which the said party of the first part owns, or which it may control by lease or otherwise, or in which it holds any interest whatsoever, including all mineral rights, timber, mud and water privileges, rights of way and other easements of every character located in either of the counties of Cherokee, Bartow, Catoosa, Dade, or Walker, in the state of Georgia, or Jackson or De Kalb counties, in the state of Alabama.

"Also that portion of the company's Cole City branch railroad lying in Marion county, Tennessee, and which extends from the line of the state of Georgia to Shellmound, on the Nashville, Chattanooga & St. Louis Railway, together with the rights of way and privileges belonging thereto.

"Also all real property of every character and description, together with all and singular the improvements thereon, which the said party of the first part owns, or which it may control by lease or otherwise, or in which it holds any interest whatsoever, including all mineral rights, timber, mud and water privileges, rights of way and other easements of every character located in either of the counties of Cherokee, Bartow, Catoosa, Dade, or Walker, in the state of Georgia, or Jackson or De Kalb counties, in the state of Alabama, whether said property be specifically included in the foregoing description or not.

"It being the intention of this instrument to convey to the trustee all the right, title and interest of the company, of whatever nature such interest may be, in, of and to said lands and each and every parcel thereof, as well as in, of or to any other real estate now belonging to the company, whether the same be specifically described or not, together with all and every the rents, issues, income, appurtenances, tenements, hereditaments, fixtures, rights, easements, leases, leaseholds, rights of way, licenses and privileges thereto belonging or in any wise appertaining, as well as all and every authority to enter upon, use and enjoy any lands to the full extent that the company has hitherto used, owned, employed or enjoyed the same, or which it or its grantors has or have heretofore claimed or which it now claims the right to convey, own, use, employ or enjoy."

Immediately after the just copied part of the instrument are the following provisions:

II. "All lands, mines, buildings, machinery and other property, real or personal, of every character and description whatsoever constituting additions to and betterments and improvements of the said mortgaged properties in respect of which bonds shall be issued under this indenture."

III. "Together with all and singular the machinery, buildings, warehouses, factories, mills, shops, magazines, furnaces, houses and structures of every character upon the lands hereby conveyed; and all steam engines, locomotive engines, boilers, tramways, cars, cables, fans, loaders, railroad tracks, mining and manufacturing machinery and equipments, plans, conductors, tools, implements and personal property of every kind in any way connected with the mining and transportation of ores and coal upon or from said premises, or with the manufacture of iron, steel or other products thereon and wheresoever situated (excepting coal, coke, iron ore and minerals after the same have been mined, and also excepting certain railroad rails and splices leased from the Alabama Great Southern Railway Company by lease dated March 15, 1905, and from the Nashville, Chattanooga & St. Louis Railway by leases dated November 1, 1905, and December 9, 1905), and all patents, patent rights

and licenses under patents, now owned by the company or to which it is now in any way entitled.

"To have and to hold all and singular the said lands, premises, property, real and personal, and appurtenances, hereby mortgaged, conveyed or assigned, or intended so to be, with the remainders, reversions, privileges and appurtenances now or hereafter belonging or in any wise appertaining thereto, unto the trustee, its successors and assigns, forever. But in trust, nevertheless," etc.

From time to time after the execution of the mortgage or deed of trust the grantor therein purchased and placed upon the premises mortgaged, for use in connection with the mining operations, movable and detached articles of personal property, such as locomotives, dinkeys, steam shovels, mine cars, etc., which were in the possession or control of the mortgagor's trustee in bankruptcy at the time of the filing of the petition for the foreclosure of the mortgage. What is complained of is the action of the court in deciding that the property just mentioned was embraced in the mortgage and should be sold under the foreclosure of it.

The controversy turns upon the meaning or effect of the above-quoted subdivision II of the instrument's statement of what is embraced by it. In behalf of the appellant it is contended that that provision cannot properly be given the effect of making subject to the conveyance such after-acquired property as that in question. Attention is called to the Georgia statute, which provides that "a mortgage given by a person or corporation to a trustee or trustees, to secure an issue of bonds, shall, when it is expressly so stipulated therein, embrace * * * after-acquired property of such person or corporation" (Georgia Code of 1910, § 3256), and to decisions to the effect that prior to the enactment of that statute after-acquired property could not be embraced, even by express stipulation. Durant v. Duchesse D'Auxy, 107 Ga. 456, 464, 33 S. E. 478; Penton v. Hall, 140 Ga. 235, 79 S. E. 917.

It is contended that the language used in subdivision II shows that it was intended to be used in the present tense, so as to include only property constituting additions to and betterments and improvements of the mortgaged property at the time the instrument was executed. Another contention is that it was not intended to embrace such detached personal property as that in question, which, when subsequently acquired by the mortgagor, did not constitute permanent or fixed improvements on real estate.

If subdivision II is given the meaning attributed to it in behalf of the appellant, it embraced nothing in addition to what was embraced by subdivisions I and III. Subdivision I covered all the mortgagor's then owned real estate intended to be conveyed, including all appurtenances, fixtures, or improvements thereon owned or controlled by the mortgagor. Subdivision III embraced all the mortgagor's then owned personal property, such as that in question and used as it was. Evidently subdivision II was intended to cover property other than that which was explicitly covered by the provisions which immediately preceded and succeeded it. The use in subdivision II of the language, "real or personal property of every character and description whatsoever constituting additions to and betterments and improvements of

the said mortgaged properties," is a clear manifestation of an intention to embrace something other than "said mortgaged properties"; in other words, something in addition to what the mortgagor owned at the time the mortgage was executed. If the provision is given any effect at all in addition to that of the other subdivisions of the description of what was intended to be embraced, it is in necessary effect, within the meaning of the above-quoted Georgia statute, an express stipulation that after-acquired property of the kind mentioned was to be embraced by the mortgage. If the language used in that subdivision had been "all lands, mines, buildings, machinery and other property constituting additions to and betterments or improvements of the said mortgaged properties," it would have been, to say the least, questionable whether such personal property as that in question could properly be regarded as additions to or betterments or improvements of the previously described mortgaged real estate.

But the language used explicitly embraces personal as well as real property. If it was in contemplation that any personal property whatsoever would constitute an addition to or a betterment or improvement of the previously described mortgaged real estate, certainly such personal property as that which is in question was intended to be included. The mortgaged real estate included lands, mineral rights, railroad rights of way, and a railroad, all constituting parts of a mining property operated by the mortgagor. No personal property well could be considered as having a better claim to be regarded as constituting additions to or betterments or improvements of such mining real estate than locomotives, dinkeys, steam shovels, mine cars, etc. Those things are not to be excluded on the ground that such movable and detached articles of personal property do not constitute additions to or betterments or improvements of real estate, as the language of the instrument makes it plain that it was contemplated that purely personal property might come within the category stated. By subdivision III of the description of the property intended to be embraced in the mortgage, personal property such as that in question which then was owned by the mortgagor passed by the mortgage, if it was in any way connected with the mining and transportation of ores and coal upon or from the previously described and mortgaged real estate, or with the manufacture of iron, steel, or other products thereon. The language of subdivision II, considered in the connection in which it was used, is indicative of an intention to treat such after-acquired property as that in question, placed and used as it was, as constituting additions to, or betterments or improvements of, the previously described mining property, and to subject it to the mortgage. To hold that that property is not covered by the mortgage, we think, would amount to depriving the provision mentioned of an effect which its language shows was intended.

A result of the above-stated conclusion is that the decree appealed from is not subject to the objections urged against it. That decree is affirmed.