## LATHROP *et al. vs.* WHITE, guardian, *et al.*

1. A deed, on January 2, 1867, by George H. White to William T. White, as trustee for the wife of said William, no other *cestui que trust* being mentioned therein, was the same in legal effect as if it had been made directly to the wife. The legal title was in the wife, and she could, after the making of said deed, have sold the land and made a good title thereto, without leave of court.

2. The act allowing children of a married woman, who had a separate estate, to share with their father upon her death, not being passed until 1871, when Mrs. White died in 1868 or 1869, the title to the property in question descended directly to her husband, said Wm. T., regardless of the fact that she then had a child living, who was plaintiff in the present case in the court below.

(*a*) This being true, the said White inherited two unpaid notes given by one Boon for the purchase money of the land, and had the right to deposit them with Lathrop & Co. as collateral security for a debt due them by said White.

(*b*) If Mrs White were dead when the land was sold to Boon, then White, her husband, having inherited it, certainly had the right to sell it. If she were living, and White sold it as trustee for her, and afterwards acquired title, his title went to Boon.

3. Therefore the child of said Wm. T. White and wife would not now have any right to complain of the sale to Boon or the use made by her father of the Boon notes, whether there were usury in the debt of White to Lathrop & Co. or not. Lathrop & Co. had a right to sue the

Boon notes, deposited with them as collateral, to judgment, (White having died leaving his debt to them unpaid,) and to make any set-tlement with Boon in relation thereto which they and Boon saw proper to make ; hence they had the right to enter the judgment satisfied, take a transfer of the bond for titles given by White to Boon, and, the balance due of the purchase money being thus paid by Boon, to take and hold possession of the land surrendered to them by Boon.

4. The record of the deed from Geo. H. to Wm. T. White, trustee, could not of itself be notice that the property conveyed in said deed was bought with the proceeds of other property devised by the will of the father of Mrs. White in trust for her use during her life, and at her death for her children, the deed itself making no reference to such will .or such property, nor mentioned any *cestui que trust* other than Mrs. White. There is nothing in the items of the will referred to, or in an application made to have Wm. T. appointed trustee of the property devised instead of another who declined to act, to show what was the character of the property devised; nor was there anything in an application made by White, as trustee under the deed of George H., to the chancellor for leave to sell the land conveyed in such deed, to show that this last named land was bought with the proceeds of the property devised. So that no con-structive notice appears in the case, and the evidence is quite weak as to whether in point of fact the land was so purchased.

5. But it is not contended that Boon had any actual notice of the alleged use of the property devised or its. proceeds, and the papers of record being of themselves not notice, he certainly was an inno-cent purchaser. This being so, as Lathrop & Co. hold under him, it matters not whether they had notice or not. If Boon's title were good, they got a good title from him.

6. Whether, as is contended, Lathrop & Co. did not go into possession of the land when Brown gave it up, but surrendered it to George H. White, agreeing that White should take the land and rent it and pay the debt of William T., and when that was done the land should belong to the child of said William T., was a question for the jury, which does not seem to have been submitted to them by the court. If the agreement were made and the debt paid within the time agreed, then the child would be entitled to the land ; otherwise not.

May 28, 1888.

Husband and wife.    Trusts.    Collateral security. Notice. Before Judge GUSTIN. Houston superior court. October term, 1887.

In 1862, the grandfather of Mrs.. Adkisson, by his

will gave, among other devises, to one Woodward, certain property,

" in trust for the sole and separate use and benefit of my daughter, Leah E. Jones, for and during her natural life, and not to be subject to any of the claims, debts, contracts or liabilities of any husband she may hereafter marry, and at her death to go to any child or children she may have, to be distributed among them, if more than one, equally, share and share alike. And should my said daughter die, either before or after marriage, leaving no child or children, then it is my will and desire that all the property, hereinbefore bequeathed in this item of my will, shall be equally divided between the children of my three brothers, Timothy, John and Barden, if living, or among their representatives if dead."

The other facts are stated in the decision.

W. L. GRICE and W. S. WALLACE, for plaintiffs in error.

HARDEMAN & DAVIS, *contra.*

SIMMONS, Justice.

George H. White, as guardian of Leah E. Adkisson, brought his complaint for land against Margaret A. Lathrop *et al.*, in Houston superior court. He claimed title to the land as guardian, under and by virtue of a deed made by George H. White, in whom was the legal title, to William T. White, as trustee for the latter's wife. He alleged that said trustee purchased the lands with the proceeds of a trust estate which he held for the petitioner's ward's mother, in trust to hold the same for her use during life, and at her death for her children. He further alleged that said trustee went immediately into possession of the land under the deed, and so remained until 1871, when he removed beyond the limits of the State, and left tenants in possession, who so remained until after his death in 1872, leaving petitioner's ward the sole heir; that the wife of the trustee had died before the death of the trustee in 1868 or 1869. Attached to the declaration was an abstract of title. The abstract consisted of a deed from Whitehead to McLane,

dated January, 1842; a deed from McLane to John G.
White, November, 1849; a deed from John G. White to
George H. White, September, 1866; and a deed from
George H. White to William T. White, trustee, January
2d, 1867. This latter deed recited that it was an inden-
ture made between George H. White, of the one part,
and William T. White, trustee for his wife, Leah E.
White, of the other part, " to have and to hold said land
to the only proper use, benefit and behoof of him, the
said William T. White, trustee as aforesaid, his heirs,
executors, etc., in fee simple." The warranty is to
William T. White, trustee for his wife aforesaid, his
heirs, etc. It appears from the record in the case that,
in October, 1867, White, the trustee, and his wife made
application to the chancellor for leave to sell said land,
stating that White held said land as trustee; and gave
certain reasons for the sale thereof. On October 10th,
1867, the chancellor passed an order in chambers, allow-
ing White to sell the land and reinvest the proceeds
thereof. All these proceedings were placed upon the
records of Houston superior court. In this petition and
order no reference whatever was made to any child or
remainderman. Soon after this order for sale was
granted, White sold the land to one Boon, for $2,000,
and took Boon's notes for the purchase money, payable
in four equal instalments, due at one, two, three and
four years. Boon took White's bond for titles to the
land, and went into possession in 1868. Boon paid two
notes when they fell due, but was unable to pay the
other two. In 1868 or 1869, Mrs. White, the *cestui que
trust,* died. After her death, White became indebted to
Lathrop & Co., and gave his individual note to them for
$912.49, dated January 12th, 1871. After giving this
note to Lathrop & Co., White put into their hands as col-
lateral security the two unpaid notes of Boon, amount-
ing to $1,000, which had been given to him as trustee,

for the land. After this transaction, White moved to the
State of Louisiana, and died there in 1872. Lathrop &
Co. sued these notes to judgment at the May term, 1874;
and were pressing Boon for the money. At this point
there was a settlement or an arrangement made between
Lathrop & Co. and Boon and Geo. H. White, the plain-
tiff in the court below, whereby Boon transferred in
writing the bond for titles which he held from White,
the trustee, to Lathrop & Co., and gave up the possession
of the land. Lathrop & Co. had the execution against
Boon marked " satisfied in full," and filed in the clerk's
office the $912 note given by White to them. There
was a conflict in the testimony at this point, White con-
tending that there was a parol agreement between him
and Warren that Lathrop & Co. should keep the land
until the rents were sufficient to pay the debts due them
by William T. White, and then the place should be sur-
rendered up for the benefit of the child; while Warren
denied this, and insisted that the trade was uncon-
ditional, that he gave White twelve months in which
to redeem the land, and White failed to redeem it.
Much testimony was introduced on this point.

It seems that this point in the case was not submitted
by the court to the jury. The firm of Lathrop & Co.
was dissolved at the death of Lathrop, and on the dis-
tribution of assets this land fell to the wife of Lathrop,
and a deed to it was made to her by the surviving part-
ner and the other heirs of Lathrop. Upon the trial of
the case, under the charge of the court, the jury returned
a verdict in favor of the plaintiff, with mesne profits,
and the defendant made a motion for a new trial, which
was overruled, and she excepted.

It seems to us that this case was tried in the court
below upon a wrong theory; and it is, therefore, unneces-
sary to review the many grounds of error set out in the
motion for a new trial. From the evidence disclosed in

v81—3.

this record, we do not think the plaintiff in the court
below was entitled to recover in this case, unless it was
upon a theory which was not submitted by the court
the jury,—that is the conflict between George H. White
and Warren, as to what the contract between them was
when the bond for title was transferred by Boon to
Lathrop & Co., of which we will speak later on.

1. It will be remembered, from the statement of facts
in this case, that on January 2d, 1867, George H. White
made to his brother, as trustee for the latter's wife, a
deed to this land.   In that deed there is no other *cestui
que trust* mentioned but the wife of William T. White.
That deed was made subsequent to the passage of the
act of 1866, generally known as the "woman's law."
It was therefore the same in law as if it had been made
regularly to the wife of William T. White.   At that
time she was capable of taking and managing her own
property, and there was no necessity for a trustee.   Nor
was there any necessity for her and her trustee to apply
to the chancellor for leave to sell this land.   The legal
title was in her, and she could have sold it and made a
good title thereto without leave of the court.   *Sutton vs.
Aiken* 62 *Ga.* 733; *Carswell vs. Lovett*, decided at last
term, (80 *Ga.* 36,) and cases there cited.

2. This property being hers, and the legal title being
in her, when she died in 1868 or 1869, all of her property
descended to her husband.   At that time he was her
sole heir at law, regardless of the fact whether she had
children or not.   The act allowing children of a married
woman, who has a separate estate, to share with the
father upon her death was not passed until December,
1871, (acts 1871–2, p. 48,) subsequent to the death of
Mrs. White.   This child, the plaintiff in this case in the
court below, therefore had no right or interest in this
property upon the death of her mother.   All went, under
the law, to the husband and father.   This being true,

White inherited the two unpaid notes given by Boon for the purchase money. The title to them was in him after the death of his wife, and he had a right, they being his property, to dispose of them as he saw proper. He had a right to place them with Lathrop & Co. as collateral security for his individual note. If Mrs. White was dead when the sale was made to Boon, as contended by counsel for defendant in error, then White having inherited this property, he certainly had a right to sell it to Boon. If she was living, and White sold it as trustee and afterwards acquired title, his title went to Boon. *Parker vs. Jones*, 57 *Ga.* 204.

3. Nor has the guardian or his child any right now to complain of that transaction, whether there was usury in the notes or not. Lathrop & Co. had a right to sue them to judgment and make any settlement with Boon in relation thereto that they and Boon saw proper to make; and no one has a right to object to that settlement, unless it be W. T. White, who placed them in Lathrop & Co's. hands as collateral. See *Partridge vs. Williams*, 72 *Ga.* 807.

4. But it is alleged by the counsel for the defendants in error that Lathrop & Co. had notice that this land was purchased with the proceeds of trust property arising under the will of Uriah Jones, the father of Mrs. White and the grandfather of this plaintiff; or if they did not have actual notice, there were sufficient facts and circumstances to put them upon inquiry. We have carefully read and considered the evidence in this record, and we have been unable to find any facts or circumstances sufficient to put Lathrop & Co. upon notice or upon inquiry as to where the fund came from which purchased this land from George H. White in January, 1867. In the case of *Bazemore vs. Davis*, 55 *Ga.* 504, this court held that "the record of a settlement or trust deed is not constructive notice, except in relation to the prop-

erty conveyed therein. It is not of itself notice as to property purchased by the trustee with the proceeds of that property." As before remarked, the deed from George H. White to William T. White, trustee, recites that it is made to him as trustee for his wife, and does not mention the child or children, or remainderman, or any other usee except the wife. The application filed by White and his wife to the chancellor for leave to sell this land, nowhere mentions any other usee than the wife. It is true that in 1864, there was an application on record by J. M. Davis, reciting the will of Uriah Jones, in which one Woodward was appointed trustee for Leah Jones, and stating that Woodward declined to accept the trust, and asking the chancellor to appoint William T. White trustee for his wife, Leah White, formerly Jones. There is nothing in the items of the will referred to, or in this application to have White appointed trustee for his wife, to show what was the character of the property given in the will to Leah. When the purchasers came to look at these records, and saw that this property now in controversy was conveyed by George H. White to William T. White as trustee for his wife, was that a sufficient circumstance to put them upon notice or inquiry? Could they not have properly concluded that this was an original trust, created by George to William in those hazardous times? Were they compelled to go back three or four years and look to the application to appoint White trustee under the will of Uriah Jones, and then to trace all the trust funds in his hands so as to bring them to this particular land? We are inclined to think that this would be putting too great a hardship upon purchasers. It would be too strict a rule in regard to commerce and the daily transactions of the people. The plaintiffs, on the trial of this case, seemed to realize that the records of the court were not sufficient to show notice, and resorted to parol tes-

timony in order to trace this fund. They had to intro-
duce as a witness George H. White, the person who
made the deed to his brother in 1867; and his evidence
is rather weak as to the fund having arisen from the
estate of Uriah Jones. It seems to us that he testifies
to a presumption rather than to a fact. The only way
in which he says he knows that the fund that he bor-
rowed from his brother was a trust fund, was his famil-
iarity with his brother's business. Whether this partic-
ular money which he borrowed did arise from the trust
estate, he does not say positively. See *Bazemore vs. Da-
vis, supra.*

5. Besides all this, it is not even contended by the
defendant in error that Boon had any notice, or that
there were any facts or circumstances that would put
him upon inquiry. From the facts disclosed in this
record, he certainly was an innocent purchaser. He had
no notice. Nor was there any fact to put him upon in-
quiry as to this land having been conveyed to William
T. White by George White in payment of money that
George had borrowed of the trust estate. Boon being
an innocent purchaser, and having transferred his bond
for title to Lathrop & Co. and put them in possession
of the land, it matters not whether Lathrop & Co. had
notice or not. If Boon's title was pure, they purchased
a pure title, and no bad faith on their part would render
it impure. Our conclusion, therefore, is (1) that the
deed made by George H. White to William T. White,
trustee for his wife, put the title into the wife; (2) that
she having died in 1868 or 1869, and prior to the act
of December, 1871, the husband became her sole heir,
and was entitled to all of her property, real and per-
sonal; (3) that the title of all her property being in
him, he had a right to place with Lathrop & Co. Boon's
two notes as collateral security for his own individual
note; (4) that Lathrop & Co. had a right to settle these

two notes with Boon, upon his turning over to them his bond for titles and putting them in possession of the land; (5) this record does not disclose that Lathrop & Co. had any notice, nor were there sufficient facts and circumstances to put them upon inquiry as to whether the fund which originally paid for this land arose under the will of Uriah Jones; (6) that Boon certainly was an innocent purchaser without notice; (7) that Lathrop & Co., having purchased from Boon, who was an innocent purchaser, got his title, and it was good to them, whether they had notice or not. Therefore the plaintiff has no right to recover.

6. White, the guardian, however, contends that Lathrop & Co. never went into possession of this land. He claims that when Boon surrendered the possession, he surrendered it to him, and that he and Warren, one of the partners of Lathrop & Co., made a verbal contract, whereby it was agreed that White should take the land and rent it and pay the debt of his brother, and when that was done, the land should belong to his ward. This Warren denies. The court below seemed to take a different view of the law of the case from what we have taken, and failed to submit this matter to the jury. We think that if White made this contract with Warren, that he was to take the land and rent it and pay the debt of his brother, and after the debt was paid the land was to go to his ward and niece, then if the debt was paid, she would be entitled to it. But if there was no such contract as that made, and Warren only gave him twelve months in which to redeem the land, and he failed to redeem it, then of course she cannot recover. This is a matter entirely for the jury as to which theory they will adopt after hearing the evidence. If the case should be tried again in the court below, we presume that the court will submit this matter to the jury, under proper instructions.

Judgment reversed.