## ISLER v. GRIFFIN.

1. An instrument attested as a deed and in all material respects in the form of a deed, except that it contains the words, "to take effect from and after my [the maker's] death and . . . from and after the death of my father and mother, and not until then," should be construed to be not a will but a conveyance passing title in presenti, with right of possession postponed.

2. The court did not err in rejecting evidence offered to show that an instrument which was one of the plaintiff's muniments of title was a will and not a deed.

3. The court did not err in refusing to continue the case for the purpose of making parties, and in holding that the parties sought to be added by amendment were necessary parties to the issue raised by the defendant's prayer for reformation.

4. When a contingent remainder becomes vested by the happening of the event upon which the estate was contingent, the falling in of the estate inures to the benefit of the grantee named in a conveyance executed prior to the event upon the happening of which the expectant estate became vested.

5. In a contest between a conveyance of land to an innocent purchaser for value and a voluntary deed of older date and duly recorded, evidence tending to show that the purchaser bought in good faith and without actual notice of the prior conveyance was relevant and material, and should have been admitted.

MARCH 3, 1910.

Complaint for land. Before Judge Spence. Calhoun superior court. December 21, 1908.

John L. Griffin brought complaint for land against Becton Isler. Attached to the declaration was the following abstract of title: "Deed from John Colley to Jesse H. Griffin, trustee, of October 18, 1869, recorded Nov. 6, 1875 in Book F-6, pages 91-92-93, in the office of the clerk of the superior court of Calhoun county; deed from H. C. Fentriss to Jesse H. Griffin, trustee, of December 10, 1881, recorded in the clerk's office of the superior court of Calhoun county on the 17th day of December, 1885, in Book G-6, pages 393-4; deed from Peyton J. Griffin to Jesse H. Griffin, trustee for for John L. Griffin, of the 17th day of May, 1889, recorded in the clerk's office of the superior court of Calhoun county in Book J, folio 225, on the 14th day of December, 1895." The last instrument included in the abstract of title reads as follows:

"State of Georgia, Calhoun County. This indenture made this the 17th day of May, in the year of our Lord (1889) eighteen hundred and eighty-nine, between Peyton J. Griffin, of the county of Calhoun, State aforesaid, of one part, and J. H. Griffin, of the same place, the other part, witnesseth: That for and in consider-

ation of the natural love and affection which he, and said Peyton J. Griffin, has and bears to his nephew, J. L. Griffin, son of W. T. Griffin, of said county and State, and for and in consideration of the sum of five dollars cash in hand paid by the said J. H. Griffin at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, I, said Peyton J. Griffin, hath bargained, granted, sold, and conveyed unto the said Jesse H. Griffin for the sole and separate use of the said John L. Griffin (in trust for and during his natural life, to take effect from and after the death of the said Peyton J. Griffin), exempt from all the material rights of the said J. H. Griffin and his successors or the said Peyton J. Griffin, for the said John L. Griffin's sole and separate use, and should the said John L. Griffin die before the said Peyton J. Griffin, then the property herein conveyed shall remain in possession and control of the said Peyton J. Griffin during his natural [life] in trust for William E. Griffin, brother of John L. Griffin, and if the said William E. Griffin should die before the said Peyton J. Griffin, then to his brother Andrew C. Griffin, and if said John L., William E., and Andrew C. Griffin, should all die before the said Peyton J. Griffin, then all the property herein conveyed shall vest a fee-simple title in the nearest of kin of the said P. J. Griffin, to have and to hold my reversionary right to my interest as an heir to my father and mother estate, or that part of it known as the Fentriss estate place, and my part of the personal property thereto belonging, to take effect from and after my death and the death of my father and my mother, and not until then.   Signed, sealed, and delivered the day and year first above written, in the presence of J. M. Newton,　　　[Signed] Peyton J. Griffin."
　John Hasty, N. P. Ex. J. P.

　The plaintiff insisted that this instrument is a deed, while the defendant contended that under a proper construction it is a will. Upon this point the court sustained the contention of the plaintiff. Thereupon the defendant presented an amendment to his answer, setting up, among other contentions, that by mutual mistake of the parties to said instrument it "was under the court's ruling written and executed as a deed, whereas the parties intended that the paper should be the last will and testament of the said Peyton J. Griffin;" and prayed that the heirs-at-law of the grantor and the grantee be made parties to the case and the instrument be reformed.

The defendant also moved the court to make the heirs referred to parties to the case, that they be served, and that the case be suspended until service could be had and the parties be given an opportunity to appear and plead.   This motion the court overruled, holding that the heirs-at-law of Jesse H. and Peyton J. Griffin were not necessary parties to the action.   At the conclusion of the evidence submitted by the plaintiff the defendant moved for a nonsuit, and the motion was overruled.   At the close of all the evidence the court directed a verdict in favor of the plaintiff for the premises in dispute and for mesne profits, and later overruled a motion for a new trial.   The defendant excepted to each of the three rulings stated.

*J. J. Beck* and *J. R. Pottle,* for plaintiff in error.

*Smith & Miller,* contra.

BECK, J.   (After stating the foregoing facts.)

1.   The instrument held by the court below to be a deed conveying the property in controversy, from Peyton J. Griffin to Jesse H. Griffin in trust for John L. Griffin, is in the form of a deed in all respects material to be considered, except that it contains the words: "to take effect from and after the death of the said Peyton J. Griffin and . . from and after the death of my father and mother, and not until then."   It is also attested as a deed. Whether or not such an instrument is a deed can only be decided in the affirmative, unless we disregard the rulings in the cases of *West* v. *Wright,* 115 *Ga.* 277 (41 S. E. 602), *Wynn* v. *Wynn,* 112 *Ga.* 214 (37 S. E. 378), and *Griffith* v. *Douglas,* 120 *Ga.* 582 (48 S. E. 129), and the authorities there cited.   In those cases the question raised upon the construction of the instrument which we have under consideration was, after ample discussion, decided adversely to the contention of the plaintiff in error.

2, 3.   A contract is an agreement between the parties to it. A will is no contract at all, but a unilateral disposition of property. A contract or conveyance may be reformed by inserting in it terms left out by fraud, accident, or mistake, or by eliminating terms similarly inserted.   And this may be done regardless of its effect upon the validity of the contract when corrected to speak the real agreement of the parties.   But it is not a reformation of a contract to let the terms stand as written and merely show that there never was any contract at all,—as, for instance, that the grantor

never signed it, or was induced to sign it by fraud, or the like. To have a decree that an instrument is merely invalid as it stands written, the proceeding is for cancellation, not reformation. To merely declare that one who signed a paper intended it to be a will instead of a deed, without changing any of its terms, is not reformation. Here one prayer was that the instrument be reformed, and complaint is made of a refusal to allow time to serve certain parties merely as parties proper for reformation.' Aside from the fact that this amendment was made pending the trial and time asked, the only assignment of error on this subject in the bill of exceptions deals with such parties as necessary for a reformation of the instrument. Also the complaint made in the motion for a new trial, and the contention in the brief of counsel for plaintiff in error in regard to rejecting certain evidence that the maker of the instrument said, in the presence of attesting witnesses, that "he wished them to witness his will, and that the paper which he asked them to witness was his will," are based entirely on the contention that such evidence was admissible for the purpose of reforming the instrument. Considering the exceptions on this subject as made, they are not well taken.

4.. Error is assigned upon the direction by the court of a verdict for the plaintiff in the case; and it is insisted that this order was erroneous on the ground that at the time of the execution of the deed from Peyton J. Griffin to Jesse H. Griffin in trust for the plaintiff, the former had no interest in the property which he could convey. It appears from the record that the land involved in this suit had been conveyed by Fentriss to Jesse H. Griffin, the father of Peyton J. Griffin, in trust for the sole and separate use of Elizabeth, the wife of the said Jesse H. Griffin, "for and during her natural life" and "for her sole and separate use, and on her decease to such own child or children as she may leave surviving her, not including the issue of any deceased child or children." Peyton J. was one of the three children of Jesse H. and Elizabeth Griffin, surviving at her death, and the land was actually divided among them. The death of Elizabeth did not occur until after the execution of the deed from Peyton J. to Jesse H., in trust for John L. Griffin. Under this state of facts, Peyton J. Griffin had, at the time of the execution of the deed last referred to, only a contingent remainder in the land sought to be conveyed by that in-

strument.    *Smith* v. *Smith,* 130 *Ga.* 532 (61 S. E. 114, 124 Am.
St. R. 177).    And counsel for plaintiff in error insist that a con-
tingent remainder can not be the subject of a sale and conveyance.
To what extent this is true it is unnecessary here to decide; for
subsequently to the execution of the deed the event happened upon
which the estate of Peyton J. Griffin, the grantor, was contingent,
and the expectant estate became a vested one, and this operated
to the benefit of the grantee in the deed, relating back to the time
of the grant, if the deed itself at the time of its execution was in-
sufficient to pass title.    *Parker* v. *Jones,* 57 *Ga.* 204; *Lathrop* v.
*White,* 81 *Ga.* 29 (6 S. E. 834); *Hill* v. *O'Bryan,* 104 *Ga.* 137,
142 (30 S. E. 996).

5.    The defendant in this action relied upon a deed from Pey-
ton J. Griffin, the common grantor of himself and the plaintiff,
and insists that while his deed was executed subsequently to the
deed under which the plaintiff claims, he was an innocent pur-
chaser for value, while the plaintiff took, if at all, under a volun-
tary conveyance, of which he (the defendant) did not have actual
notice.    The defendant himself testified: "that he once saw the
paper which he claims was Peyton J. Griffin's will in Judge Beck's
law office, and this was before he bought the land from Peyton,
but that he did not read it or hear it read; that it was brought
down to Judge Beck by Mr. Mills, the stepfather of plaintiff; that
he knew about this paper and knew that plaintiff claimed title to
the land in dispute by virtue of this paper before he paid any
money and took a deed to said land from Peyton J. Griffin."    But
the court refused to allow the defendant to testify as follows:  "I
negotiated with Peyton J. Griffin to buy the land in controversy
before the death of Jesse H. Griffin.    At that time I had heard
there was some paper in existence in reference to the land in dis-
pute, from Peyton J. Griffin in favor of John L. Griffin, the plain-
tiff, which had been made to Jesse H. Griffin as trustee.    I there-
upon went to Jesse H. Griffin and inquired about the paper; and he
told me that Peyton J. Griffin had made his will in favor of John
L. Griffin, but that the same was a sham and was not intended to
take effect, and that I could go ahead and purchase the land."    The
court erred in refusing to allow the introduction of this testimony.
If the deed to the plaintiff was a voluntary conveyance, and the de-
fendant was a bona fide purchaser for value, the deed to the latter

would prevail as against the former conveyance, if the grantee in the latter was without actual notice at the time of the purchase and taking the conveyance.    In the case of *Fleming* v. *Townsend,* 6 *Ga.* 103 (50 Am. D. 318), Nisbet, J., delivering the opinion of the court said: "We believe that the notice must be *actual,* in order to make the conveyance good against him; that is, there must be brought home to him knowledge of the prior conveyance, at the time of purchase.    How this shall be done must depend upon the circumstances which attend each case.    Whether, in a given case, the purchaser had this knowledge must depend upon the proofs adduced to establish it.    *Constructive* notice will not do alone; and therefore the registry of a prior deed will not do.    However, for many purposes, the record of a deed is notice, we hold that it is not such notice as will make a voluntary conveyance good against a subsequent purchaser for value.    The principle upon which a purchaser is not protected, who has notice, is this: Knowing of the existence of a prior deed, he is presumed to be guilty of fraud upon the rights of the prior grantee.    Now it is unreasonable to presume a fraudulent intention, from knowledge of a fact, that is itself (the knowledge) a matter of presumption; a matter of mere legal construction.    It will be observed that the question of *fraud* which arises here is not one of legal fraud, but it is a question of fraud actual.    The actual fraud of a subsequent purchaser can not, it seems to me, be established upon the basis of an abstract legal inference, to wit, the inference which the law draws, that when a deed is recorded, the whole world, and therefore the purchaser in question, has knowledge of it.    This is a basis altogether too unsubstantial, upon which to rest the property rights of men.    Fraud must be in all cases *proven;* it may be proven by circumstances; it may be presumed from them; but still, it is a general rule that it must be proven.    A fraud, in fact, can not be demonstrated by construction."    See also the case of *Culbreath* v. *Martin,* 129 *Ga.* 280 (58 S. E. 832).    The evidence rejected by the court should have been admitted for consideration by the jury in determining the issue as to whether the defendant Isler bought without actual notice, and acted in good faith and without fraud in purchasing the land in controversy.

*Judgment reversed.    All the Justices concur, except Fish, C. J., absent.*