## PENTON *et al. v.* HALL; and *vice versa.*

1. Where an owner of land and of certain personalty thereon agreed to sell them, took notes from the purchasers, and entered into a written contract with them, by one of the terms of which it was agreed that "all increase of personalty and improvements made by said parties of the second part shall become and be the property of said party of the first part until the notes and obligations herein specified of said parties of the second part are paid in full," such agreement constituted an effort to mortgage any increase in personalty which might be made. As to personal property which might be thereafter acquired by the purchasers and moved upon the place, such a mortgage was not valid.

2. Although a third person may have stated to one contemplating a sale of land and personalty thereon that certain personal property situated on another place belonged to the intended purchasers, yet where the parties to the sale recognized that for certain reasons the personalty situated on the other property could not be given as a security at that time, and the clause quoted in the first headnote was inserted in the instrument for the purpose of giving to the seller a mortgage on such property, not presently, but at a later date; and where, in a proceeding solely to foreclose such mortgage, a receiver was appointed who took possession of both lots of personalty, his right of possession of the property which was not included in the sale depended upon the validity of the mortgage upon it, and it being invalid to that extent, the person who made the representation mentioned above, and who was the real owner of the property, was not estopped from reclaiming it from the possession of the receiver by means of an intervention.

(*a*) No ruling is made as to what effect such representation might have had in some form of action dependent, not upon the validity of the mortgage as to this property, but upon the question of the general title of the debtors.

3. Under the pleadings and evidence, there was no error in directing a verdict in favor of the intervenor.

　　　　　　　　　　JULY 16, 1913.

Intervention. Before Judge Charlton. Chatham superior court. May 4, 1912.

George H. Penton agreed to sell to Leo G. Hall, Robert C. Hall, and Charles H. Richardson a tract of land used as a dairy farm, and the personal property situated upon it, consisting of 25 cows,

one horse, a wagon and harness, a buggy and harness, and certain described cans, buckets, barrels, etc., for the sum of $6,000. The parties entered into a written contract in regard to such sale, specifying that of the purchase-price $100 was payable in cash, and that 78 notes for $75 each should be given for the balance, maturing monthly, and one note for $50 maturing in 79 months, all bearing interest. It was agreed that the notes should be delivered to a named person to collect as they should fall due, and to apply the proceeds on a loan of $4,500 made by another person to Penton, and secured by a deed. After the payment of such loan, any overplus was to be paid to Penton. Upon payment in full of the notes given by the purchasers, Penton bound himself to convey to them the property above described. Then occurred the following clause: "It is understood and agreed that said parties of the second part buy said property upon the terms above mentioned, and agree that they meet all of their obligations promptly at maturity, and in the meantime will keep said property in good repair and condition, will pay all taxes and insurance upon the property, and will conduct a dairy farm thereon, and keep up said herd of cattle to the present number and standard; and the said parties of the second part shall be at liberty to make any advantageous trade of the personalty herein before described, provided as valuable property is bought [brought?] on said farm through said trade as that which may be taken off; all increase in personalty and improvements made by said parties of the second part shall become and be the property of the said party of the first part until the notes and obligations herein specified of said parties of the second part are paid in full." It was further agreed that upon failure of the purchasers to comply with any of the conditions of the contract, a default might be claimed and Penton might proceed to foreclose the agreement.

Penton filed an equitable petition against the purchasers, alleging various defaults, and praying for judgment; that the property covered by the agreement be sold and the proceeds applied to the payment of the debt due to him; that the purchasers be enjoined from removing or disposing of any part of the personalty located upon the land; that a receiver be appointed; and for general relief. It was alleged that at that time there were 57 cows, several calves, four horses, and certain agricultural implements on the place. A

receiver was appointed. W. W. Hall filed his intervention, claiming that certain described cows which had been seized by the receiver belonged to him, and praying that they be delivered to him. The plaintiffs in error contended that the intervenor had represented that these cows belonged to the purchasers of the property from Penton before he made the sale, and that the clause above quoted was inserted in the instrument so as to include them, they not being at the time on the place which he sold. As to the making of such a representation there was some controversy. The evidence showed that in fact the intervenor had bought the cows from another person before the sale which was made by Penton to the purchasers of the land and certain cattle from him. The plaintiff, Penton, testified, that he offered to sell the dairy farm to the intervenor, but the latter declined to buy; that he said that "the boys" (the persons who later purchased from Penton) wished to buy one; that the intervenor told him that the dairy business at the place where the cows now in controversy were then located belonged to "the boys," and that the cattle belonged to them; and that nothing was said by the intervenor as to what would be done with such cattle. He also testified that one of the three purchasers, who acted as the spokesman for the others, said that the cattle now in controversy belonged to them, and that they would move such cattle from the place where they were to the place which they were buying from Penton; that, under these representations, he made the agreement with the purchasers, with the understanding that the cattle would be moved over to his place. He testified further: "The reason that I wanted to know if they were going to be moved to my place was because I asked the boys to give me further security on the purchase;" and that the spokesman of the purchasers said that he had not quite finished paying for the cattle, that he owed a couple of hundred dollars on them, and that he would move them to the place which they were buying. The clause in regard to all increase in personalty was put into the contract to cover the cattle on the other farm, "because they couldn't give them to me as security until they were paid for."

The presiding judge directed a verdict in favor of the intervenor. The plaintiff and the receiver moved for a new trial, which was refused, and they excepted. The intervenor filed a cross-bill of exceptions, complaining of the admission of certain evidence.

*E. S. Elliott,* for plaintiffs in error.   *T. F. Walsh Jr.,* contra.

LUMPKIN, J.   (After stating the foregoing facts.)   The case turns upon the clause of the agreement that "all increase in personalty and improvements made by said parties of the second part shall become and be the property of the said party of the first part until the notes and obligations herein specified of said parties of the second part are paid in full."   It is not contended that the cows claimed by the intervenor were received in exchange for any of those which were on the place at the time it was sold, or were bought to keep up the herd to the same number, or that they were the natural increase of the cows sold.   They were cows which were on another place at the time the contract was made, and were subsequently moved to the place bought from the plaintiff.   It was contended by counsel for the intervenor that the clause in regard to the increase referred only to the natural increase of the cows sold.   But we do not think this is a proper construction.   The expression, "all increase in personalty and improvements made by said parties of the second part," includes something more than calves which might be borne by the cows already on the place and included in the sale.   Other personalty besides cows was sold, and this provision covered "all increase in personalty," which included a wagon, buggy, cans, harness, umbrellas, and other articles, which, though unquestionably personalty, are not capable of having natural increase.   The language is not fairly susceptible of that limited construction.

If we look to the evidence of the plaintiff, he testified that the clause was inserted so as to give him additional security for the notes of the purchasers of certain property from him.   It was provided that any increase in personalty should become the property of Penton, the vendor, "until the notes and obligations herein specified of said parties of the second part are paid in full."   This form of words, containing a provision that property which had never belonged to the creditor should be his until the notes were paid, was appropriate for the creation of a mortgage.   *Ward* v. *Lord,* 100 *Ga.* 407 (28 S. E. 446) ; *Burkhalter* v. *Planters Loan and Savings Bank,* 100 *Ga.* 428, 432, 433 (28 S. E. 236) ; *Lubroline Oil Co.* v. *Athens Bank,* 104 *Ga.* 376, 380 (30 S. E. 409) ; *Scott* v. *Hughes,* 124 *Ga.* 1000 (53 S. E. 453).   But, except in the instances provided for by statute, a mortgage can not be given on property

to be thereafter acquired. Civil Code, § 3256; *Georgia Southern &c. Ry. Co.* v. *Barton,* 101 *Ga.* 466 (28 S. E. 842) ; *Lubroline Oil Co.* v. *Athens Bank,* supra; *Durant* v. *Duchesse D'Auxy,* 107 *Ga.* 456 (33 S. E. 478). This was not a general description of property where parol proof could serve to apply the description to the property. But it was an effort to create a mortgage on property which the parties recognized could not then be mortgaged. The plaintiff testified in his own behalf that one of the purchasers stated that he could not give the plaintiff any security on those cows, because the title was not in him, but as soon as they were paid for they would be included; thus showing that the parties did not consider them as being then included.

It was contended that the intervenor was estopped from claiming title to the property, by reason of his representation that the cows belonged to the persons with whom the plaintiff was contemplating making a trade. In addition to what has been said above, it must be borne in mind that this was not a proceeding against all of the property of the purchasers, nor was the receiver appointed for all of their property. The action was for the purpose of foreclosing the written contract of purchase, and the receiver only had the right to the possession of those things which fell within the contract, and which he could seize for that reason. It was an equitable foreclosure, and, as to the cattle in controversy, it was an effort to foreclose a mortgage on property which might be acquired after the mortgage was given. We have shown that it was invalid as to such property. The evidence proved that the property belonged to the intervenor, unless he was prevented from claiming it by estoppel. Assuming that he made the representation stated by the plaintiff, this was not sufficient to change the mortgage, which was invalid as to this property, into a valid mortgage upon it; nor was it sufficient, in a proceeding of the character of the present one, to estop him from claiming that the property was not subject to a lien thus sought to be created upon after-acquired property. As the receiver's right to the possession of the cattle depended upon the validity of the mortgage sought to be given upon them, and we have held that such lien was not valid, it follows that he was not entitled to hold them as against one who in fact had title to them.

*Judgment on main bill of exceptions affirmed. Cross-bill of exceptions dismissed. All the Justices. concur.*