REAL ESTATE BANK & TRUST CO. *v.* BALDWIN LOCOMOTIVE WORKS.

PER. CURIAM. 1. If the instrument under which the plaintiff claimed title to the engine involved in the controversy be treated as one for the lease of railroad equipment, with the right of purchase, under the Civil Code (1910), §§ 2791, 2792, it did not appear that the railroad on which the engine was used or to be used was operated by the lessee, O. T. Bourne & Co. (under which name O. T. Bourne did business).

(*a*) An instrument falling within the provisions of the code sections above cited should be recorded in the county where is situated the principal office of the railroad company in this State, and not in the county where the individual lessee of the engine may reside, if he owns or operates the railroad. In this case the evidence showed that the railroad was in the county where the instrument was recorded, and that the lessee or purchaser of the equipment had an office there; but did not show whether there was a railroad company, or, if so, where its principal office was located, or that the lessee of the equipment owned or operated the railroad.

2. If the instrument should be treated as one falling within the provisions of the Civil Code (1910), §§ 3318, 3319, as to execution, attestation, and record, it was not recorded in the county of the residence of the lessee. Civil Code (1910), § 3259.

3. Where a lease of railroad equipment under the Civil Code (1910), §§ 2791, 2792, was executed in Pennsylvania on behalf of the lessor company by a person signing as its president, and another attesting as its secretary, and it contained a statement that the lessor constituted and appointed the person who signed as secretary its attorney for it and in its name and stead to acknowledge the agreement of lease "before any person having authority by the laws of the commonwealth of Pennsylvania to attest such instruments, to the intent that the same may be duly recorded," and when on the trial it was admitted that the instrument was executed by the parties, and a commissioner of deeds for the State of Georgia in Pennsylvania certified that the person who so signed as secretary of the lessor acknowledged before him that the agreement of lease was the act of the lessor,—as between the parties to this litigation the acknowledgment will be treated as sufficient to authorize the record, as against the contention that an acknowledgment before a commissioner of deeds for Georgia in the State where the instrument was executed was not sufficient to meet the provision that, if the instrument should be made out of the State, "it should be executed in the presence of, and attested by or proved before, a commissioner of deeds for the State of Georgia," etc. 1 C. J. 760, § 23 and citations.

(*a*) If the execution of this instrument was admitted, the absence of a corporate seal attached would not render it inadmissible in evidence, or prevent its being considered. *Vizard* v. *Moody*, 119 *Ga.* 918 (6), 923 (47 S. E. 348).

4. The general rule (with certain statutory exceptions, not relevant in

this case) is that a mortgage can not be made to include personal property as to which the mortgagor has neither possession nor the right of possession at the time of making the mortgage, but for which it is sought to provide by a clause including any personal property which may be subsequently acquired by the mortgagor. Civil Code (1910), § 3256; *Penton* v. *Hall,* 140 *Ga.* 235, 237, 238 (78 S. E. 917).

(*a*) A manufacturing company gave to a bank a conveyance covering the timber, logs, etc., on a certain plantation, boiler, engine, and said mill machinery, and certain other personalty, to secure the payment of a described indebtedness and any other indebtedness which might thereafter arise on the part of the maker of the instrument to the secured creditor. Provision was made for a sale in case of default in payment. The instrument also provided that any personal property of any description, which the manufacturing company should acquire and place upon the plantation in connection with the timber business, should be covered by the conveyance, so that the title thereof should be and vest in the secured creditor as soon as such personalty should be placed upon the plantation. Thereafter the president of the manufacturing company, who was also a broker living and having his principal office in a different county, though also having an office in the county where the plantation was, acting in a firm name under which he did business, made with a company manufacturing locomotives a contract of lease for a locomotive engine, with the privilege, on certain terms, of purchasing. He had the privilege of using it on his railroad. In some way not shown by the evidence, the engine was placed upon a short railroad, which was in the county where the manufacturing company did business, and which apparently was in possession of the manufacturing company, and the engine came into possession of the latter. Whether the railroad was incorporated, or had separate offices, or where its main office was, if it had any, did not appear from the evidence. *Held,* that under such facts the title to the locomotive engine did not pass to the bank by virtue alone of the clause in the conveyance to it in relation to after-acquired property, although the contract between the manufacturer of the locomotive and the lessee or purchaser thereof may not have been recorded as provided by the statute.

5. The action was originally brought by the locomotive company against the bank, to recover the locomotive engine of which the bank had obtained possession under a sale by a trustee appointed by the creditor, under a provision in the conveyance made to it by the manufacturing company as to enforcing the security in case of default by the debtor. The defendant denied the plaintiff's title to the locomotive. Subsequently it amended its answer by presenting certain grounds and prayers for equitable relief. The plaintiff then amended its petition by alleging certain grounds for equitable relief on its behalf, and praying for a money judgment, if it should be held not to have a valid title. On the trial the court directed a verdict in favor of the plaintiff against the defendant, for the engine, to be discharged by the payment by the defendant to the plaintiff of a stated sum with interest. *Held,* that, under the pleadings and evidence contained in the record,

the court was not authorized to direct the jury to find such a verdict. Civil Code (1910), § 5926.

6. None of the grounds of the motion for a new trial, except as above indicated, require a reversal.

(a) Assignments of error that the court erred in holding a stated legal proposition, or in failing to hold another proposition, without showing how he so held or failed to hold, or any distinct ruling on the subject, do not sufficiently invoke the decision of this court further than as a consideration of the point may be involved in an exception to the direction of a verdict.

(b) There was no error in refusing to grant a nonsuit.

(c) While some of the allegations of the plaintiff's amended petition may not have been entirely free from some of the numerous technical objections raised by the defendant, there was nothing in the objections which requires a reversal of the judgment because of the overruling of the demurrer, or because of the allowance of the amendment.

*Judgment reversed. By five Justices, all concurring.*
SEPTEMBER 14, 1916.

Trover. Before Judge Charlton. Chatham superior court. August 11, 1915.

*E. S. Elliott* and *G. H. Richter,* for plaintiff in error.

*H. W. Johnson,* contra.