THOMAS *v.* HUDSON *et al.*

No. 13186.   JULY 10, 1940.

*Carl T. Hudgins,* for plaintiff.

*Clarke & Clarke, Brandon, Hynds & Tindall,* and *Morris Brandon Jr.,* for defendants.

626

JENKINS, Justice. ■■ By section 1 of the act of 1889 (Ga. L. 1889, p. 106; Code, § 67-2501), it is provided that "deeds, mortgages, and liens of all kinds, which are now required by law to be recorded in the office of the clerk of the superior court of each county within a specified time, shall, as against the interests of third parties acting in good faith, and without notice, who may have acquired a transfer or lien binding the same property, take effect only from the time they are filed for record in the clerk's office." The act has the usual repealing clause. The Code, § 67-111, contains provisions, which were in existence at the time of that act, and have been embodied in all the Codes since the Code of 1863, that: "A mortgage recorded in an improper office, or without due attestation or probate, or so defectively recorded as not to give notice to a prudent inquirer, shall not be held notice to subsequent bona fide purchasers or holders of younger liens. A mere formal mistake in the record shall not vitiate it." Construing these two present Code sections, it must be said that, even though "the act approved March 24, 1933 . . , adopting the present Code of Georgia, had the effect of enacting into one statute all of the sections of that Code," the rule of construction obtains that "where two sections of the Code are found to be in irreconcilable conflict, and both sections are derived from acts of the legislature, this conflict must be settled by resort to the original acts from which the conflicting sections are derived, and that section which is derived from the later act of the legislature must control." *Atlanta Finance Co.* v. *Brown,* 187 *Ga.* 729, 731 (2 S. E. 2d, 415), and cit.; *Lamar* v. *Allen,* 108 *Ga.* 158, 165 (33 S. E. 958). With respect to deeds, the later statute (§ 67-2501) has been given effect in numerous decisions. In *Willie* v. *Hines-Yelton Lumber Co.,* 167 *Ga.* 883 (5), 891 (146 S. E. 901), it was held: "Where a deed which appears on its face to be entitled to record is filed for record in the office of the clerk of the superior court of the county in which the land lies, it takes effect, as against third persons without notice, from the time it is so filed. The actual recording is the duty of the clerk, and the statute does not contemplate that . . an erroneous performance of [such duty] shall operate to defeat the grantee who has properly filed his deed." To the same effect are *Durrence* v. *Northern National Bank,* 117 *Ga.* 385, 386 (43 S. E. 726); *Greenfield* v. *Stout,* 122 *Ga.* 303 (2), 305 (50 S. E.

111). With respect to mortgages, the later statute has been given similar application in *Touchstone. Live Stock Co.* v. *Easters,* 172 *Ga.* 454 (157 S. E. 683), where it was held that "the lien of [a] mortgage on . . . realty will be effective as against subsequent purchasers from the mortgagor from the date of . . filing;" and the fact that the clerk of the court might have kept two books for such entries or records, and might have made his entry of the mortgage relating to realty in a book relating to personalty, would not vary the rule. See *Merchants & Mechanics Bank* v. *Beard,* 162 *Ga.* 446 (5), 454 (134 S. E. 107), to like effect with regard to bills of sale to secure debt. Accordingly, under the above rule of construction and these decisions, the mortgage on land here in question, having been duly filed for record in 1929, although it was not then indexed in a book relating to instruments affecting realty, and although it was recorded in a chattel-mortgage book, was not for those reasons subject to cancellation on this petition of a purchaser, who, though without actual notice of the mortgage, bought part of the mortgaged land after the mortgage had been duly filed. This is true even though it be assumed, as alleged by the petition, that the prudent inquiry and search, by the attorney,for the purchaser, of the record books relating particularly to realty would not have disclosed the record of the mortgage. Nor did the defendant assignees of the mortgage lose their priority over the subsequent purchaser and his predecessor in title by the fact that no assignment of the prior mortgage was recorded.

■ It is the general rule that where a person executes a mortgage creating a lien in præsenti on property expressly or impliedly purporting to be then owned by him, even though he may not have title, after-acquired title inures to the benefit of the mortgagee taking in good faith, and the mortgage lien attaches against the mortgaged property the moment the mortgagor's title is acquired or vested. *Swift & Co.* v. *First National Bank,* 161 *Ga.* 543, 547 (132 S. E. 99); *Parker* v. *Jones,* 57 *Ga.* 204 (3), 205; *Terry* v. *Rodahan,* 79 *Ga.* 278, 292 (5 S. E. 38, 11 Am. St. R. 420); *Lathrop* v. *White,* 81 *Ga.* 29, 35 (6 S. E. 834). "The idea upon which this rule is based is, that when one gives a mortgage upon land to secure a debt, he is estopped by the recitals in his contract creating the lien from denying his title to the mortgaged premises."

*Hill* v. *O'Bryan,* 104 *Ga.* 137, 143 (30 S. E. 996); *Usina* v. *Wilder,* 58 *Ga.* 178 (2); *Allen* v. *Lathrop,* 46 *Ga.* 133 (2), 137; *Sutlive* v. *Jones,* 61 *Ga.* 676 (3), 679; *Boisclair* v. *Jones,* 36 *Ga.* 499; *Mims* v. *Wight,* 78 *Ga.* 12 (2) (3 S. E. 447); *Marable* v. *Mayer,* 78 *Ga.* 60; *Carter* v. *Jackson,* 115 *Ga.* 676 (3) (42 S. E. 46). The Code, § 29-111, declares: "The maker of a deed can not subsequently claim adversely to his deed under a title acquired since the making thereof. He is estopped from denying his right to sell and convey." There is a line of decisions of this court, laying down this principle, which refer to the fact of warranty of title contained in the conveyance or mortgage, without, however, going to the extent of directly holding the warranty necessary in order that the subsequently acquired title may inure to the benefit of the vendee or mortgagee. *Sikes* v. *Seckinger,* 164 *Ga.* 96 (1, c), 102 (137 S. E. 833), and cit.; *Oliver* v. *Holt,* 141 *Ga.* 126 (2) (80 S. E. 630); *Morris* v. *Butler,* 184 *Ga.* 845 (193 S. E. 883). This principle has been summarized in 41 C. J. 478, § 395, as follows: "It is a general rule, that where a mortgage contains full covenants of warranty, a title acquired by the mortgagor after its execution inures to the benefit of the mortgagee and is bound by the mortgage lien, and that without the aid of such covenants an after-acquired title does not pass in the absence of a statute to that effect. In some cases, however, the rule has been stated, without qualification, that an after-acquired title will inure to the benefit of the mortgagee generally upon the equitable theory that the mortgage operates as an executory agreement attaching to the property when acquired, or on the ground of an estoppel of the mortgagor to defeat or impair the security which . . is given by the hostile use of a subsequently acquired right or title." In *Goodson* v. *Beacham,* 24 *Ga.* 150 (2), 153, it was held that where one made a deed to another without a title, but with a warranty, "his deed was an attempt to convey the fee;" and "such being the intention, the consequence would be that if [the grantor] should afterwards acquire the title, he would be bound to convey it to [the grantee], as much so as if the contract were one standing in the form of a bond for titles. Perhaps, this would be the consequence, even without the warranty." It was further held that upon the acquiring of such title, "a perfect equity vested in" the grantee.

While it is true that the Code, § 29-302, provides that "in a

sale of land there is no implied warranty of title," no question as to breach of warranty is involved in a case such as this; but, as already indicated, since the creation of a lien in præsenti on particularly described land at least impliedly asserts title thereto, even though there is no express warranty, it is upon the doctrine of estoppel that, unless the instrument shows on its face that no such purpose was intended, as in *Dailey* v. *Springfield,* 144 *Ga.* 395, 400 (87 S. E. 479, Ann. Cas. 1917D, 943), the mortgagor himself and those claiming under him, except purchasers or lienholders without either actual or constructive notice, are precluded, as against the mortgagee acting in good faith, or his assignees, from denying the title which has been asserted. We think, therefore, that the general rule as set forth by this court in the cases first cited in this division of the opinion should not be qualified by imposing as a condition the existence of an express warranty of title by the mortgagor. A different rule might obtain in a conveyance which went no further than merely to disclaim title. See *Morrison* v. *Whiteside,* 116 *Ga.* 459, 461 (42 S. E. 729) ; *Taylor* v. *Wainman,* 116 *Ga.* 795 (43 S. E. 58) ; *Citizens & Southern National Bank* v. *Ellis,* 171 *Ga.* 717 (2, a), 729, 730 (156 S. E. 603). As to whether the rule would apply to a voluntary conveyance need not now be considered. There is, however, still a third line of cases in this State, in which *possession* by the mortgagor at the time of the execution of the instrument might seem to have been made a factor in upholding the effectiveness of the lien on property the *title* to which is afterwards acquired. *Hill* v. *O'Bryan,* supra; *Wood* v. *Dozier,* 142 *Ga.* 538, 540 (83 S. E. 133). The idea behind these references to "possession" is perhaps derived from the language of the Code, § 67-103, which, with an exception as to mortgages securing bond issues, provides that "A mortgage may embrace all property in possession, or to which the mortgagor has the right of possession at the time, or may cover a stock of goods, or other things in bulk, but changing in specifics, in which case the lien is lost on all articles disposed of by the mortgagor up to the time of foreclosure, and attaches to the purchases made to supply their place." This section, as construed by decisions, has manifest reference, not to mortgages purporting to create liens in præsenti upon property then owned by the mortgagor, but to such instruments as "purported to create . . a lien upon any interest in

the described [property] which the mortgagor might acquire after the time of [the] execution" of the instrument, which provisions are made invalid with the exceptions stated in the statute. *Durant v. Duchesse D'Auxy,* 107 *Ga.* 456 (2), 463, 464 (33 S. E. 478); *Penton* v. *Hall,* 140 *Ga.* 235, 238 (78 S. E. 917); *Real Estate Bank & Trust Co.* v. *Baldwin Locomotive Works,* 145 *Ga.* 831 (4) (90 S. E. 49); *Ga. So. & Fla. Ry. Co.* v. *Barton,* 101 *Ga.* 466 (1, 4) (28 S. E. 842); *Lubroline Oil Co.* v. *Athens Savings Bank,* 104 *Ga.* 376, 382 (30 S. E. 409); *Hogg* v. *Fuller,* 17 *Ga. App.* 442 (87 S. E. 760); *Passieu* v. *Goodrich Co.,* 58 *Ga. App.* 691 (199 S. E. 775).

The purpose of the statute being thus to prevent (save as to the exceptions mentioned) the inclusion in mortgages of clauses designed to reach forward and create liens on properties, interests, or increment, such as income or increase, then non-existent and subject to the cotingencies of the future, neither the statute nor those decisions control a case such as this, where, although the title was afterwards acquired, the mortgage purported to create a lien in præsenti on a described tract of land, which the mortgagor must at least impliedly have purported to own. Such an implied assertion of title necessarily carries with it a claim of possession, actual or constructive, which, under the doctrine of estoppel, he should not be permitted subsequently to deny as against the mortgagee acting in good faith, or the assignees of the mortgagee. We are of the opinion, therefore, that the general and unqualified rule stated in the numerous decisions by this court should be followed, in a case between such parties and their privies, and as here, between the assignees of such a mortgagee and subsequent purchasers from the mortgagor who had constructive notice of the instrument. It might be mentioned, however, that so far as this particular case is concerned, even if an express warranty or covenant were necessary to make this mortgage on realty operative upon the after-acquired title, such a requirement was fulfilled by the language of the mortgage, which expressly declared, "I hereby covenant that I have the right to make this mortgage." This, under the authority of Moore *v.* Crawford, 130 U. S. 122, 130 (9 Sup. Ct. 447, 32 L. ed. 878), and earlier United States Supreme Court decisions there cited (Van Rensselaer *v.* Kearney, 11 How. 297, 325, 13 L. ed. 631; Irvine *v.* Irvine, 9 Wall. 617, 625, 19 L. ed. 800), would be

the equivalent of an express warranty. See also Code, § 38-114. Likewise, so far as this case is concerned, even if possession of the land by the mortgagor at the time of the mortgage was vital, since the petition of the subsequent purchaser, attacking the validity of the mortgage, merely set up a lack of ownership in the mortgagor at the time of the instrument, and failed to negative possession, the dismissal of the petition on demurrer, for this additional reason, was not erroneous.

■ "A valid agreement not to sue upon a demand until the happening of a particular event [suspends] the running of the statute [of limitations] until such event occurs." 17 R. C. L. 887, § 245; 755, § 121; 37 C. J. 811, § 154; 953, § 323. Accordingly, where, as in this case, the mortgage itself provided, in an alleged valid covenant signed by the mortgagee, that he agreed "not to sue or enforce the collection of this note during the life of [the mortgagor's] father and mother, also to give 12 months after their deaths," and the father still remains in life, the mortgagee being thus deprived of the right to enforce his security until after the agreed period, the statute likewise is suspended. And this is true irrespective of whether or not the effect of the quoted agreement was to change the *maturity* of the note until twelve months after the death of both parents, or was to leave the *maturity* the same as expressed in the note, that it was due "12 months after date [September 1, 1917], with interest at 8 per cent. per annum from maturity." The right to sue being suspended in either event, the instrument was not barred by the statute, even though more than twenty years had elapsed from its date.

■ With respect to the remaining averments and prayers of the petition, in so far as they might affect the right to any other relief against the defendant assignees of the mortgage, and the correctness of the judgment dismissing the petition only as to such assignees, the petition sought: (a) A decree setting up and enforcing the mortgage, if held to be a valid lien, first against the land the title to which still remains in the petitioner's grantor, who bought from the mortgagor part of the mortgaged land, and against the defendant bank, which holds a security deed from petitioner's grantor, made after the filing for record of the deed to petitioner, without excepting the land conveyed to petitioner, and a decree adjusting the equities of those parties and of another

purchaser, who bought a small part of the mortgaged land from the mortgagor before other purchases; (b) a judgment against the petitioner's grantor and against the mortgagor and another grantor, upon their warranties made in deeds to the petitioner and his predecessor in title, for all damages including attorney's fees and costs sustained by reason of the defect in title from the existence of said mortgage, if held valid; and (c) a reformation of the bank's security deed so as to exclude petitioner's eight acres from the twenty-two acres covered by the description without exception. As to the first stated question, the petition showing on its face that the holders of the mortgage have no right to foreclose it during the lifetime of the mortgagor's father, who is still in life, and this court having no right to assume that when such holders have the right to proceed they would do so otherwise than in accordance with what would be the correct rules of law and equity, the petition is premature in so far as it seeks at this time what would be in effect merely a declaratory judgment as to the future rights and equities of the several parties. Nothing, therefore, is decided as to whether the holders of the mortgage would be required to proceed first against property other than that owned by the petitioning purchaser, or the defendant prior purchaser; or whether such a rule as to the order of subjecting the mortgaged property would not apply to the holders of the mortgage, but merely control in adjusting the equities of the purchasers from the mortgagor as between themselves. See Code, § 39-118; *Cumming* v. *Ware,* 3 *Ga.* 460, 471; *Barden* v. *Grady,* 37 *Ga.* 660; *Craigmiles* v. *Gamble,* 85 *Ga.* 439, 442 (11 S. E. 838); *Hollinshed* v. *Woodard,* 124 *Ga.* 721 (2), 723 (62 S. E. 815); *City of Leesburg* v. *Forrester,* 59 *Ga. App.* 503, 505 (1 S. E. 2d, 584).

■ With regard to the averments and prayers relating to warranties in deeds made by the petitioner's grantor and two previous grantors, it is true that a general warranty, by the terms of the Code, § 29-303, will include all existing incumbrances; that "where an alleged breach of warranty is based upon the existence of an outstanding incumbrance which it is the duty of the grantor to discharge, it is not necessary to allege or prove that the grantee in the deed has been evicted, or has lost possession of the property;" that "in such case the grantee may voluntarily pay off a valid outstanding lien . . . against the property, of which the

grantor has knowledge and refuses to pay, and which is due; and after such payment the grantee may recover of the grantor upon the breach of the warranty that the property is free from incumbrance." *Cheatham* v. *Palmer*, 176 *Ga.* 227 (2, 3, *b*), 235 (167 S. E. 522); *McEntyre* v. *Merritt*, 49 *Ga. App.* 416 (175 S. E. 661); *Pone* v. *Barbre*, 57 *Ga. App.* 684 (2) (196 S. E. 287). The petition in this case, however, not only fails to allege any loss of possession of the land, but fails to allege any payment of the outstanding mortgage. Accordingly, whether or not the defendant assignee of the mortgage could under any theory be taken as a necessary or at least proper party to the averments and prayers relating to the alleged warranties of title in the deeds to the petitioner and his grantor, the petition showed no cause of action.

As to the final question raised—the right of the petitioner to a reformation of the security deed held by the defendant bank so as to exclude the land alleged to have been previously conveyed by the bank's grantor to the petitioner—the demurrers having been sustained only as to the defendant assignees of the prior mortgage, without passing upon such right of reformation, that and other undecided questions affecting other parties to the case are not determined.

Under the preceding rulings, the court properly dismissed the petition as to the defendant assignees of the mortgage.

*Judgment affirmed. All the Justices concur, except Atkinson, P. J., and Bell, J., disqualified.*