## 30999. WEATHERLY *v.* PARR.

DECIDED SEPTEMBER 29, 1945.

*Heath & Heath,* for plaintiff. *Andrew J. Tuten,* for defendant.

FELTON, J. J. C. Weatherly sued J. W. Parr to recover damages for a breach of warranty of title contained in the deed conveying certain land. The jury found for the defendant. The plaintiff's motion for a new trial on the general grounds only was overruled, and he excepted.

The plaintiff's action is based on a warranty deed from J. W. Parr to him, dated November 26, 1943, conveying 62.5 acres, more or less, of lot 510 in the 2d land district of Jeff Davis County, bounded on each side by land of a named person, containing a general warranty of title. The consideration was $500. The plaintiff proved without dispute that 12 acres of the 62.5 acres deeded to him by the defendant were sold on September 6, 1938, for state, county, and school taxes for the years 1934 through 1937 as the property of N. M. Riddle, were bought in by Jeff Davis County, and a deed was executed and delivered to the county; that N. M. Riddle acquired the 62.5 acres from E. J. Riddle by deed, dated December 26, 1916; that the defendant acquired the said land from N. M. Riddle on March 29, 1941; and that, on September 2, 1944, the plaintiff was forced to obtain a quitclaim deed from the county to remove the encumbrance from the land, he having requested to no avail that the defendant do so. The defendant introduced in evidence a tax deed from N. M. Riddle, by the sheriff, to Jeff Davis County, conveying 10 acres in the northeast corner of lot 510 in said county; also a quitclaim deed from Jeff Davis County to Turpentine & Rosin Factors Inc., quitclaiming the 10 acres, and the resolution authorizing the conveyance. The defendant, called to the stand for cross-examination by the plaintiff, testified: "I sold this tract of land to Mr. Weatherly in 1943. This is my signature on this deed. I bought that land from Riddle Brothers in 1941. I warranted the title to Mr. Weatherly when I sold it. Yes, Mr. Weatherly in 1944 told me there was a tax deed against it, and asked me to pay it. I got a letter from you asking me to pay it. I had paid all taxes on it when I bought it so [I] did not pay Mr. Weatherly for the tax deed he claimed was against it. [Direct Examination] I made a trade with Riddle Brothers in 1941 to buy this land and some other property, if the

title was good and taxes paid. They owed T. & R. Factors some money on their property, and I went with Mr. Culbreath of T. & R. to the courthouse in Hazlehurst to see about this land. We went in the office of the clerk of the superior court, and checked his records for tax deeds or other executions. Then went to the tax commissioner's office, and checked his record for unpaid taxes against the pavements in question, and paid all taxes he had against this property. Mr. Register gave him a draft on T. & R. for the taxes, and he attached the tax receipts to the draft, so T. & R. would get the receipts when the draft was paid. Then we went to the ordinary's office (it was agreed that the ordinary of Jeff Davis County was in charge of its fiscal and financial affairs), and checked his records for tax deeds, and paid for a tax deed Jeff Davis County had against it. Mr. Culbreath gave him a draft on T. & R. to attach his deed to. These drafts were paid by T. & R. I do not owe Mr. Weatherly one cent." On direct examination the defendant testified: "I am the defendant in this case. I do not owe J. C. Weatherly any money. If I did, I would pay him. I told Mr. Riddle I would not buy this property unless everything was clear. I went with Mr. Culbreath to the clerk's office and checked the title there. He paid all taxes due in the tax collector's office. We went to the ordinary's office and paid the tax deed there. After checking his records, we paid all taxes against it. Their draft was paid. I did not hear from Mr. Weatherly until next year. Before I sold it to him, he hired a lawyer to examine the title, and he said it was good with nothing against it. [Cross Examination] We got our information about the taxes due on this property from the tax collector and tax records. We paid all he said we owed. We went to the ordinary's office, checked his records, found a tax deed, and paid it. We paid everything he said was against it. I can not remember how many tax deeds we paid him for. I do not remember what year's taxes we paid the tax collector. I think it was for 1938, 1939, and 1940, but can not remember exactly what years they were for." The plaintiff testified on cross-examination, that, before he bought the land from the defendant, he hired a lawyer (not his present lawyer) to check the title to the property, and the lawyer advised him that it was good, with nothing against it. The only logical inference to be drawn from the facts is that, when the plaintiff

bought the property from the defendant, there was an outstanding encumbrance on the 12-acre tract in the form of a deed from the sheriff to the county, under which the right of redemption was not foreclosed by the required notice from the county. The redemption by the plaintiff was the removal of an encumbrance, for which he is entitled to recover under the warranty from the defendant. Code, § 29-303. As the act of 1937, page 491, applies to tax sales made after its passage (*Ayer* v. *Lamar County,* 194 *Ga.* 712, 22 S. E. 2d, 606), the defect in the title here involved would seem to be an encumbrance rather than an outstanding title, but, whether an encumbrance or an outstanding title, no actual eviction is necessary. *Martin* v. *Hamlet,* 159 *Ga.* 465 (126 S. E. 371); *Cheatham* v. *Palmer,* 176 *Ga.* 227 (167 S. E. 522); *Joyner* v. *Smith,* 132 *Ga.* 779 (65 S. E. 68); *Sawyer Coal & Ice Co.* v. *Kinnett-Odom Co.,* 192 *Ga.* 166 (14 S. E. 2d, 879). There is no evidence whatever to the effect that the redemption by the plaintiff of the 12 acres was not necessary, or that the taxes for which the 12 acres were sold were not due or had been paid by anyone. The money paid by the Turpentine & Rosin Factors Inc. was indisputably to redeem other land for other taxes. The fact that the defendant or the plaintiff was told that there were no taxes due on the land or that there were no deeds outstanding is not evidence of such facts. A verdict for the plaintiff was demanded by the evidence, and the court erred in overruling the motion for new trial.

*Judgment reversed. Sutton, P. J., and Parker, J., concur.*