31327, 31328.   WEATHERLY *v.* PARR; and *vice versa.*

DECIDED NOVEMBER 26, 1946.

*Heath & Heath,* for plaintiff.
*A. J. Tuten, T. J. Townsend,* for defendant.

MacIntyre, J. ■ This is a suit by J. C. Weatherly against J. W. Parr to recover damages for a breach of warranty of title contained in the deed conveying certain land.

This case was formerly before this court. *Weatherly* v. *Parr,* 72 *Ga. App.* 883 (35 S. E. 2d, 381). In the former trial, then under review, it appeared from the evidence that tax fi. fas. had been issued against the 12 acres of land therein referred to for the years 1934-7 inclusive; that levies had been made upon such land and entered upon each of such tax fi. fas.; and that, pursuant thereto, a tax deed had been executed to the county. The tax fi. fas. and the levies thereon, the tax deed made pursuant thereto, and the quitclaim deed from the county to the plaintiff were all introduced in evidence without objection. The jury found a verdict for the defendant. This court there stated that the evidence was undisputed that there was an encumbrance on such land, and that the plaintiff had been forced to obtain a quitclaim deed from the county to remove such encumbrance (he having requested to no avail that the defendant do so), and that there was no evidence whatever to the effect that the redemption by the plaintiff of the 12 acres was not necessary, or that the taxes for which the 12 acres were sold were not due or had been paid by anyone; and this court held that the defect in title involved would seem to be an encumbrance rather than an outstanding title, and that the redemption by the plaintiff of such encumbrance entitled him to recover under the warranty from the defendant, and reversed the judgment on the theory that the evidence in the trial then under review demanded a verdict for the plaintiff.

Upon the second trial, which is now under review, the plaintiff introduced in evidence a general warranty deed, conveying to the defendant a tract of land and containing this description: "62 1/2 acres, more or less, of lot of land No. 510 in second land district of Jeff Davis County, Georgia, being near the southeast corner of the southwest quarter of said lot of land, now or heretofore bounded; north by lands of E. L. Adamson; east by lands of Annie Hesters; south by lands of W. F. Adamson; and west by lands of Ellis and Hollinsworth; and being all of the land acquired by the grantor under a deed dated December 17, 1942, from Turpentine and Rosin Factors Inc., recorded in Realty Book 30, page 252, in the office of the Clerk of Superior Court of Jeff Davis County, Georgia, to which

reference is hereby made for all necessary purposes." The plaintiff also introduced in evidence a general warranty deed in the usual form conveying this same land to the plaintiff and having the identical description. It contained the following warranty, "To have and to hold the said described land, with all rights, members, easements, and appurtenances thereto belonging or appertaining, forever in fee simple; and the First Party shall and will, for himself, his heirs, administrators and executors, the said described property, and all rights and privileges thereto, forever warrant defend unto the Second Party, his heirs, administrators, executors and assigns, against the lawful claims and demand of all persons whomsoever." It is upon this warranty that the plaintiff is now suing.

It is contended by the plaintiff that 12 acres, a part of this land, had been sold for taxes for the years 1934-7 inclusive, and had been bought in by the county for such taxes, as shown by a deed executed September 6, 1938; and that on September 2, 1944, the plaintiff obtained a quitclaim deed to this same land from the county in order to remove an encumbrance from his title. The plaintiff tendered in evidence the tax fi. fas. for the years 1934-7 inclusive, which had been issued on December 20 of each of such years, the levies thereon, and the tax deed made pursuant thereto to said 12 acres of land, and the quitclaim deed made by the county to the plaintiff for the same 12 acres. The levies, the tax deed, and the quitclaim deed all have the identical description of the land. The defendant objected to the introduction of the fi. fas. for the years 1934-7, inclusive (which had been introduced in evidence in the former trial without objection), on the ground that they were dormant. The court sustained the objection to the fi. fas. issued for 1934-6 inclusive. The judge, however, allowed in evidence the fi. fa. for the year 1937. The levies on the fi. fas. for 1934-7 inclusive were objected to on the ground that they were void on account of the uncertainty of description. The court sustained the objection. The tax deed, made to the county pursuant to these levies, contained the identical description as the levies. The court sustained the objection to the tax deed on the same ground, that it was void for uncertainty of description. The description of the 12 acres levied on in each of the fi. fas., the description of the land in the tax deed, and the description in the quitclaim deed from the county was as follows: "That certain tract or parcel of land lying

and being in the second land district of Jeff Davis County, Georgia, in lot of land number 510, and containing twelve acres, bounded as follows: west by Weyman Ellis; east by Annie Hesters, south by a line to be run from the east to the west boundary across the entire tract so that said tract shall contain twelve acres when said line shall have been run as aforesaid." Neither the levies, the tax deed, nor the quitclaim deed made reference to any other deed. In each of these rulings on evidence we think that the court was correct.

The description of the 12 acres of land in question gives only two boundaries, the one on the west and the other on the east. Just how could the south line be determined? The deed says that the south line is "a line to be run from the east to the west boundary across the entire tract so that said tract shall contain twelve acres when said line shall have been run as aforesaid." Even if we assume that the tract of land is in the form of a parallelogram or square, and is a part of the 62-1/2 acres above referred to, and that the east and west lines are straight, since no north boundary line is mentioned, it seems to us that the description in the deed is not a basis from which the south line in question could be located by extrinsic evidence. For the same reason, the north line can not be located. Indeed, it seems to us that the deed furnished no data from which the property intended to be conveyed could be established by extrinsic evidence. It meant nothing as a conveyance of title. *Holloway* v. *Key,* 188 *Ga.* 423 (4 S. E. 2d, 167).

Where the deed described the land as being in a designated State, county lot, and district, and then gave no other description than that the tract is bounded on the west by Weyman Ellis, east by Annie Hesters, south by a line to be run from the east to the west boundary across the entire tract so that said tract shall contain 12 acres when said line shall have been run as aforesaid, this description is so uncertain that it does not even form a key by which the land could be located. *Laurens County Board of Education* v. *Stanley,* 187 *Ga.* 389 (200 S. E. 294).

The 12-acre tract in question is a part of such 62-1/2 acres according to the testimony of the plaintiff. In *Holloway* v. *Key,* 188 *Ga.* 425 (supra), it is said, "It means nothing for a grantor conveying a part of his land to give as a boundary thereof other portions of the whole tract without in some way identifying the divid-

ing line between such portion and the part intended to be conveyed." In the instant case, the description clause in the tax deed, the levies, and the quitclaim deed failed to furnish data to identify the dividing lines, both on the north and the south, between parts of the 62-1/2 acres not intended to be sold and the 12 acres intended to be sold. Consequently, though the exact number of acres intended to be conveyed and the east and west boundaries are stated, the description of such 12 acres is insufficient and means nothing. The verbal testimony of the plaintiff (after the ruling out of the above-stated documentary evidence) does not show with sufficient certainty what lands he claimed to have redeemed in order to protect his title, and it also fails to show that it was necessary to remove any encumbrance on any land which he properly identified, the removal of which entitled him to recover for a breach of warranty.

The tax deed to 10 acres of land and the money paid to redeem such 10 acres, referred to in the decision in *Weatherly* v. *Parr,* supra, was also referred to in the evidence in the second trial now under review, but the money paid to redeem the land, being for such land and for other taxes, is not material here. The descriptive clause in the levies on each of the fi. fas. in question, the tax deed, and the quitclaim deed were all void for uncertainty of descriptions; and thus there was no outstanding title which could be said to affect the defendant's warranty. The fi. fas. for the years 1934-6 inclusive were dormant, could not be enforced, and were properly excluded from the evidence. Code, § 110-1001. Thus the only encumbrance on the plaintiff's title which the remaining evidence showed was an execution for the year 1937 for the principal sum of $9.10, and the judge properly directed a verdict for this amount and 7 percent interest.

■ The fact that the defendant objected to certain documentary evidence on the second trial of the case, which was excluded, and had not objected to such evidence on the first trial, in which the judgment was reversed by this court and a new trial granted, and the further fact that the brief of evidence which contained such documentary evidence had been approved by the trial judge, was not a waiver or an abandonment of the defendant's right to object to such evidence on the second trial, nor was he estopped to so object.

The object and purpose of a motion for a new trial is to recall and annul the verdict upon which the judgment is based in order that there may be a new trial of the issues; and in the event a new trial is granted, the case "shall stand on the docket for trial at the next term as though no trial had been had, subject to the rules for continuances provided in this Code." Code, § 70-401; *Underwood v. Heath & Co.*, 64 *Ga. App.* 180 (2) (12 S. E. 2d, 464).

If there is no reversal, or if an affirmance does not leave the case to be tried again in the court below, the settled practice is to dismiss the cross-bill of exceptions. *Robinson* v. *Georgia Savings Bank & Trust Co.*, 185 *Ga.* 688, 700 (196 S. E. 395).

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. Broyles, C. J., and Gardner, J., concur.*