## 55360. BABSON CREDIT PLAN, INC. v. CORDELE PRODUCTION CREDIT ASSOCIATION et al.

SUBMITTED FEBRUARY 7, 1978 — DECIDED JUNE 19, 1978.

*Alex Davis,* for appellant.

*Davis, Pridgen & Jones, John C. Pridgen,* for appellees.

QUILLIAN, Presiding Judge.

This is an appeal by an intervenor, Babson Credit Plan, Incorporated, in a foreclosure action by Cordele Production Credit Association against a debtor, the

Vienna Dairy of Vienna, Georgia. The principal issue at trial was the priority of security interests of the intervenor, whose assignor sold milking equipment to the Vienna Dairy which was then affixed to the realty, and Cordele — who held a prior deed to secure debt on the same realty, and also held a collateral security agreement on the dairy's cattle, milking equipment, and any similar after-acquired property. The case was tried before the judge without a jury. The court found that the milking equipment became fixtures upon affixation to the realty and that Babson's assignor failed to perfect his security interest; and that Cordele's security interest in the realty was superior, both Cordele's deed to secure debt and its collateral contract security interest in "after-acquired" property. The intervenor appeals. *Held:*

1. On April 12, 1976, Cordele made a loan in the principal amount of $300,000 to six individuals d/b/a the Vienna Dairy, and took from them a promissory note secured by a deed to secure debt on the dairy's real estate. This loan was further secured by an additional security agreement on all of the dairy's cattle and other personal property associated with the operation of a farm and a dairy farm in particular. This contract contained an "after-acquired" clause on "personal property" and "equipment of every description" of the Vienna Dairy. The deed to secure debt and the financing statement were filed for record on the same date as the loan.

On June 10, 1976, the Floyd A. Brewer Company sold to the Vienna Dairy the milking equipment which is the property involved in this suit. The property consisted principally of two vacuum pumps, twenty pulsators, forty milk nipples, a "cow flow trainer," and other associated dairy milking equipment having a total value of $16,369.30. The seller retained a "Uniform Commercial Code security interest" in the equipment with a retail installment contract and security agreement. A "financing statement" was executed by the seller and the purchaser. On that same date Brewer sold the contract to the intervenor, Babson Credit Plan, Incorporated. During 1977 the Vienna Dairy defaulted on both promissory notes to Cordele and Babson. Cordele filed a petition for a writ of possession and the court permitted Babson to

intervene.

After hearing evidence by both parties (Vienna Dairy did not answer or appear), the trial court reached a finding of fact that the installed milking equipment became fixtures upon affixation to the realty and became a part of the real estate. The court also concluded, as a matter of law, that the intervenor's financing statement was not perfected as to the milking equipment since no description of defendant's real estate upon which the fixtures were to be located was attached to and made a part of intervenor's recorded financing statement. The court also stated, as a conclusion of law, that plaintiff's security interest was entitled to priority under plaintiff's deed to secure debt from defendants, both by reason of "the property's attachment to the real estate and by virtue of the fact that the property would be after-acquired property as contemplated by the security instrument."

(a) Intervenor assigns as error the finding of the court that the personal property became fixtures. Code § 85-105 states that "[a]nything intended to remain permanently in its place, though not actually attached to the land . . . is a part of the realty and passes with it . . ." Justice Lumpkin, in *Wade v. Johnston,* 25 Ga. 331, 336, stated the general rule clearly and succinctly: "wherever the article can be removed without essential injury to the freehold, or the article itself, it is a chattel; otherwise, it is a fixture." However, aside from the general rule of physical attachment and removability, the intent of the parties is to be considered when deciding issues of the law of fixtures. Pindar, Georgia Real Estate Law & Procedure, § 10-12. The Supreme Court has held that where "[t]he intention of the parties is shown by the contract, which is unambiguous. . . [personal property] though attached to the realty, remained personal property. *Smith v. Odom,* 63 Ga. 499 [2]; *Power v. Garrison,* 141 Ga. 429 [2] (81 SE 255); *Armour v. Block,* 147 Ga. 639 (95 SE 228)." *Columbus Heating &c. Co. v. Burt,* 166 Ga. 158 (1) (142 SE 551). And even where "filling-station fixtures would attach to the realty; . . . where there is a contract by the express or implied terms of which such fixtures are to be considered as personalty they will be so treated." *Wofford Oil Co. v. Weems-Fuller Co.,* 166 Ga. 173, 175 (142 SE 887). Accord,

*Schrampfer v. Lindal &c. of Ga.,* 118 Ga. App. 92 (2) (162 SE2d 806); *Holland Furnace Co. v. Lowe,* 172 Ga. 815, 821 (159 SE 277). However, if there is a question as to intent, that issue is for the jury. *Sawyer v. Foremost Dairy Products,* 176 Ga. 854, 862 (2) (169 SE 115); *Kirkland v. Morris,* 233 Ga. 597, 599 (212 SE2d 781); Pindar, Georgia Real Estate Law & Procedure, § 10-12.

In the instant case the security agreement between the intervenor's assignor and the dairy stated in part: "It is expressly agreed that the goods are to remain personal property at all times, and shall not be or become part of or fixtures on real property." However, when the intervenor's assignor made out the UCC financing statement *he checked block number 6* which stated: "(If collateral is goods which are to become fixtures *check box* and complete.) The described goods are affixed or are to be affixed to: (general description of real estate and name of record owner or record lessee.)" (Emphasis supplied.)

The seller of the milking equipment to the dairy also testified that he told the purchaser that "it would be personal property" and "would remain our property until it was paid for . . ." This was an issue for the trial judge as the trier of fact and he determined that the property was fixtures. Our Code provides that where findings of fact are made by a court, without a jury, they "shall not be set aside unless clearly erroneous . . ." Code Ann. § 81A-152 (a) (CPA 52 (a); Ga. L. 1969, pp. 645, 646; 1970, pp. 170, 171). The finding was not clearly erroneous as there was conflicting evidence on this issue.

Without intending to be critical, but solely for information and guidance, we call attention to the form used for the "UCC—Financing Statement." The form used in the instant transaction is similar to that set forth in Code Ann. § 109A-9—402 (UCC, Ga. L. 1962, pp. 156, 414; 1964, pp. 70, 72) and is almost identical to the one contained in 5A Bender's Uniform Commercial Code Service 9-76, which bears the notation: "Form Approved by Georgia Bankers Association and Georgia Bar Association." The form contains two boxes *only* when classifying "the following types (or items) of property: . . ." It lists one box for "crops," and another box "(if collateral is goods which . . . are to become fixtures. . .)"

Personalty purchased under a retail installment contract, which is to be attached to realty, may — by specific agreement of the parties, retain the personalty classification for the property where it is the intent of the seller and the purchaser that the personalty is not to become a fixture, but an "accession." See Code Ann. §§ 109A-9—313 and 109A-9—314; *Wofford Oil Co. v. Weems-Fuller Co.,* 166 Ga. 173, supra; *Holland Furnace Co. v. Lowe,* 172 Ga. 815, 821, supra. Thus the "Financing Statement" form should be amended to provide for personalty which is to be attached to realty to be classified under *either* "fixtures" or "accessions" according to the intent of the parties.

(b) The second and third enumerated errors will be treated together as they address the same issue of whether the court erred in according priority to Cordele's prior security instruments — the deed to secure debt and the collateral security agreement that contained a "dragnet clause" which included "all other equipment of every description which may at any time hereafter be acquired by the debtors. . ."

The Georgia Uniform Commercial Code (Code Ann. Ch. 109A-9, Secured Transactions; Ga. L. 1962, p. 156 et seq., as amended) provides for priorities among conflicting security interests in the same collateral. The term "security interests" in context with or without other technical terms dealing with secured transactions can be confusing. Anderson explains that "[u]nder this Article [Code Ann. § 109A-9—101] the traditional distinctions among security devices, based largely on form, are not retained; the Article applies to all transactions intended to create security interests in personal property and fixtures, and the single term ' security interest' substitutes for the variety of descriptive terms which has grown up at common law and under a hundred-year accretion of statutes." 4 Anderson, Uniform Commercial Code 3, § 9-101:1. Further, in using the word "attachment" we refer to that point in time when a "security interest" becomes effective. "Affixation" means connecting or linking personalty to realty.

We should also distinguish between "attachment" of a security interest and "perfection" of a security interest.

"Perfection" is significant only when the question is priority between security interests, while "attachment" determines the existence of a security interest, as between the seller and purchaser. Manes Const. Co. v. Wallboard Coatings Co., 497 SW2d 334 (CCA Tex. 1973); Anderson, Uniform Commercial Code (Cumulative Supp.) 1153, § 9-204:4.

A security interest attaches when there is an agreement that it attach, value is given, and the debtor "has rights in the collateral." Code Ann. § 109A-9—204 (UCC, Ga. L. 1962, pp. 156, 391; 1963, pp. 188, 198). "A credit buyer acquires rights in the goods when possession is delivered to him by the seller." 4 Anderson, Uniform Commercial Code 179, § 9-204:7. Thus, as it was necessary for Vienna Dairy to have "rights" in the property before the security interest attached, both Cordele and Babson's "attachment" of a security interest occurred at the same time — the moment of delivery. However, the conflict here is not between two equal security interests. The court found that the intervenor's security interest was not perfected.

Code Ann. § 109A-9—301 (UCC, Ga. L. 1962, pp. 156, 397) provides: "Except as otherwise provided in subsection (2) [Not applicable here.], an unperfected security interest is subordinate to the rights of (a) persons entitled to priority under 109A-9—312." Code Ann. § 109A-9—312 (UCC, Ga. L. 1962, pp. 156, 405) sets forth criteria for priority of conflicting security interests. The sections enumerated in subsection (1) list *specific statutes* for specific problems in priority and *take precedence over* the *general rules* of priorities between conflicting security interests under subsections (2) through (6). Uniform Laws Annot., UCC (Official Comment), § 9-312 (1).

(1) We turn first to the priority to be accorded as between plaintiff's prior deed to secure debt and intervenor's unperfected purchase money security interest. Subsection (1) of Code Ann. § 109A-9—312 refers us to Code Ann. § 109A-9—313 (UCC, Ga. L. 1962, pp. 156, 407) for priority of security interests in fixtures. Subsection (2) thereof provides that " [a] security interest which *attaches* to goods before they become fixtures takes priority as to the goods over the claims of all persons who

have an interest in the real estate except as stated in subsection (4)." (Emphasis supplied.) Thus, the criterion is *attachment* and not perfection of a security interest. Subsection (4) of Code Ann. § 109A-9—313 states that "[t]he security interests described in subsections (2) and (3) do not take priority over . . . (c) a creditor with a prior incumbrance of record on the real estate to the extent that he makes subsequent advances . . ." Accordingly, Babson's security interest in the goods sold Vienna Dairy, although not perfected, attached to the goods before they became fixtures, and took priority over the prior recorded deed to secure debt to the extent that advances were made by the prior creditor to the common debtor under the deed to secure debt, before the goods were delivered—but not advances subsequent to attachment of the latter security interest. House v. Long, 244 Ark. 718 (2) (426 SW2d 814, 817). There was no evidence that any advances were made to Vienna Dairy by Cordele after the purchase money security interest attached. However, "[i]f the secured party perfects his interest by filing, which he may do in advance of affixation, he takes priority over subsequent realty claims as well. So long as he fails to perfect his interest he may, however, be subordinated to the claimants in subsections (4)(a), (b) and (c)." Uniform Laws Annot., UCC (Official Comment) § 9-313, p. 220. Cordele does not come within the enumerated sections.

The purchase money creditor (Babson) prevails "even if the conditional seller did not file notice of his security interest." See Gordon, Credit Sales of Installed Equipment, 64 Northwestern Univ. L. Rev., 651 at 667. Accord, Coogan, Security Interests in Fixtures Under the UCC, 75 Harvard L. Rev. 1319 at 1327. Thus, we find intervenor's security interest in the fixtures takes priority over Cordele's prior deed to secure debt.

(2) Our last issue is the priority between Cordele's prior collateral security agreement on the dairy's cattle, farming and milking equipment, and any similar "after-acquired [personal] property," and Babson's assignor's unperfected purchase money security interest.

We return to Code Ann. § 109A-9—312, supra, to determine priority of conflicting interests in the same

collateral. Subsection (1) does not have a specific section that applies to the instant factual base. Thus we must turn to the remaining general rules. Under subsection (4), the Code provides that "[a] purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 10 days thereafter." Babson's assignor had a purchase money security interest in the collateral—the milking equipment, effective upon delivery. It was not "inventory" collateral. Code Ann. § 109A-9—109(4) (UCC, Ga. L. 1962, pp. 156, 388). Cordele also had a security interest in the same collateral which attached as soon as the dairy received possession of the milking equipment, under the " floating lien" theory of the "after-acquired" property clause of the prior security agreement.

The "floating lien" theory that all subsequently acquired property comes under the earlier security instrument has been approved by Code Ann. § 109A-9—204 (3) (UCC, Ga. L. 1962, pp. 156, 391; 1963, pp. 188, 198). Uniform Laws Annot., UCC (Official Comment), § 9-204 (1). However, the statute provides the seller, under a purchase money contract, with a right to retain his priority *provided* he perfects his security interest before delivery or within ten days after delivery. The security interest of Babson's assignor was not perfected. Does this failure permit Cordele's security interest to prevail? We find it does not.

It would appear that we have the anomalous situation wherein the unperfected security interest of the seller of equipment, subsequently affixed to realty, takes priority over the holder of a prior security interest in the real estate, but the holder of that prior interest in the realty also has a collateral security interest in "after-acquired" personalty which would appear to prevail over an unperfected security interest of the seller. However, we must remember that this personalty was affixed to the realty and became a fixture, thus passing with the realty (Code § 85-105; *Tifton Corp. v. Decatur Fed. Savings &c. Co. Assn.,* 136 Ga. App. 710, 711 (222

SE2d 115)) and is subject to the same holding we stated above that an unperfected purchase money security interest prevails over a prior interest in the realty to the extent of advances made prior to attachment of the latter security interest but not those advances made subsequent to attachment.

The court erred in both conclusions of law that Cordele's security interest took priority and the judgment must be reversed.

*Judgment reversed. Webb and McMurray, JJ., concur.*