61943, 61944. PEASE & ELLIMAN REALTY TRUST v. GAINES et al.; and vice versa.

Quillian, Chief Judge.

This is an appeal from the denial of cross-motions for summary judgment by plaintiff, Pease and Elliman Realty Trust, and defendant, Gaines and others. We granted interlocutory appeal to both sides to determine the validity of the trial court's denial of those motions.

Delta Equities, Inc., a Fulton County corporation, purchased a tract of land in Richmond County in 1970 for ultimate use as the site for construction of an apartment complex. Subsequently, in February 1971 Delta purchased from the Atlanta Gas Light Company (AGLC), gas furnaces, ranges, hot water heaters, air conditioning units, water coolers, and thermostats, for installation in the apartments, for the sum of $283,719.06. Delta, by and through its President, Lester B. Colodny, on February 12, 1971, executed a promissory note, a deed to secure debt, a financing statement, and a security agreement to AGLC. The security agreement provided, in part: "when installed the Collateral (referring to all appliances purchased from AGLC) shall not lose its identity as personalty..." However, at the same time Delta signed a UCC Financing Statement which contained the following: "If collateral is goods which are or are to become fixtures, check [this] box and complete [this section]. The described goods are affixed or are to be affixed to: (general description of real estate and name of record owner)." The fixture

box was checked and that section filled out to refer to the collateral purchased from AGLC and the description of the land purchased by Delta from Southeastern.

Colodny, for Delta, executed a Deed to Secure Debt to AGLC of the same date, which was made subject to a former Security Deed from Delta to Goodrich Investors Group of September 21, 1970 for $2,100,000.00. Thereafter, on October 19, 1972 Delta, through its President (Colodny) and Secretary (Richard Feldman, one of the defendants) transferred the subject property to a "local realty group" composed of Colodny, Feldman, Gaines, Vlass, and Data Centers. That conveyance was made subject to a prior security deed from Delta dated September 25, 1972 to G.I.T. Realty for $2,600,000.00.

On December 16, 1972, the "local realty group" transferred the subject property to "The Calcutta, a joint venture" by warranty deed, the only exception on this conveyance being the security deed to G.I.T. of September 25, 1972. "The Calcutta" joint venturers were Colodny, Feldman, Gaines, Vlass, Data Centers, and Calcutta Apartments Associates.

Thereafter, on December 29, 1972, Delta again transferred this same property to "The Calcutta," by warranty deed, subject to a security deed of December 22, from Delta to G.I.T. to secure a loan of $1,000,000.00.

On August 29, 1973, "The Calcutta," through its "Managing Venturer," "Lester B. Colodny," transferred this property to Clayton Equities, Inc. without noting any exceptions. On that same date, Clayton Equities, through its President, Lester B. Colodny, transferred this property to the plaintiffs, Pease & Elliman Realty Trust, with warranty deed and without noting any exceptions, liens, security deeds, or other encumbrances.

In summary: Delta conveyed this property to the Goodrich Investors Group on September 21, 1970 with a deed to secure debt; to AGLC on February 12, 1971 with a deed to secure debt; by warranty deed to the local realty group (Colodny, Feldman, Gaines, Vlass, and Data Centers) on October 19, 1972; to G.I.T. on September 25, 1972 and December 22, 1972 by deeds to secure debt; and to "The Calcutta" on December 29, 1972 by warranty deed. The Calcutta transferred the property to Clayton Equities on the same date Clayton Equities conveyed the property to the plaintiffs, August 29, 1973, both by warranty deed.

Upon default by Delta in payment of the promissory note, AGLC accelerated maturity of the note and notified the present owners plaintiffs Pease & Elliman. Plaintiffs notified defendants of the AGLC claim and requested notification of any defense, and that recourse would be sought against defendants for breach of warranty

of title. All defendants who responded asserted the defense of improper recordation. Plaintiff consulted counsel and compromised the claim by AGLC to prevent foreclosure. Plaintiff paid the agreed sum of $260,000 to AGLC to discharge its claim of "lien" and brought this action for breach of warranty of title. All defendants are plaintiff's immediate or remote grantors. Defendants Vlass and Feldman subsequently filed for bankruptcy and were discharged from any indebtedness to plaintiff.

Cross-motions for summary judgment were filed and denied. Both parties appeal. At issue is the validity of the claims of AGLC represented by the security agreement, the financing statement, and the deed to secure debt. All other deeds to secure debt are not in issue in this appeal. *Held:*

1. The first issue to be resolved is the viability of the Deed to Secure Debt. (a). Delta obtained the collateral property from AGLC and executed the deed to secure debt and financing statement on February 12, 1971. The AGLC agent testified he took both instruments to "the Clerk's Office for the Richmond County Superior Court," the county where the land is located. He gave both documents to "Mrs. Lillian Fulcher" and told her "we wanted them recorded and indexed in the realty with the deed and the financing statement." Both instruments were subsequently recorded in the personalty book of the clerk's office, stamped with the date, hour, and place of recording, and returned to AGLC. AGLC was billed at a later date. We find this to be a proper filing.

Where a deed is filed for record in the office of the clerk of the superior court of the county in which the land lies, "it takes effect, as against third persons without notice, from the time it is so filed, and it is admissible in evidence as 'a registered deed,' without further proof of its execution, although the clerk may have failed to record it or may have recorded it in the wrong book." *Durrence v. Northern Nat. Bank,* 117 Ga. 385 (1) (43 SE 726); Accord, *Greenfield v. Stout,* 122 Ga. 303, 305 (2) (50 SE 111); *Willie v. Hines-Yelton Lumber Co.,* 167 Ga. 883 (5) (146 SE 901); *McEntyre v. Burns,* 81 Ga. App. 239 (1) (58 SE2d 442); *National Cash Register Co. v. Sikes,* 94 Ga. App. 391, 393 (94 SE2d 782); Pindar, Ga. Real Est. Law 661, 1059; §§ 19-128, 26-97. The presentation of the instruments to the office of the clerk constituted a proper filing. *Albany Nat. Bank v. Ga. Banking Co.,* 137 Ga. 776 (2a) (74 SE 267); 8 EGL 414, Deeds § 128; Code Ann. § 67-2501 (Code § 67-2501); Code Ann. § 109A-9—403(1) (Ga. L. 1962, pp. 156, 415 through 1964, pp. 70, 74).

"If the clerk keeps one book. . . in which are entered notations of filing for record of deeds and mortgages and other liens on realty. . . and another book as part of his docket in which are entered notations

of filing for record of deeds and mortgages and other liens on personalty, both books will constitute the docket; and an entry of filing which states the day and hour of filing, made in either book, of an instrument retaining title in a vendor as security for the purchase-price of personalty and also creating a mortgage on realty by the purchaser as additional security for such purchase-price, will comply with the statute. . .[and] an entry, in the book relating to personalty, of an instrument of the character above described, which states the day and hour of the filing, will be sufficient relatively to the mortgage clause as to realty, and will be notice to a subsequent purchaser of the realty, although no such entry is made in the other book." *Touchstone Live Stock Co. v. Easters,* 172 Ga. 454 (1, a & b) (157 SE 683); Accord, *Thomas v. Hudson,* 190 Ga. 622, 626-627 (1) (10 SE2d 396); *National Cash Register Co. v. Sikes,* 94 Ga. App. 391, 393, supra. Accordingly, the deed to secure debt was properly recorded and notice to the world. *Greenfield v. Stout,* 122 Ga. 303 (2), supra.

(b) Even though the deed to secure debt was properly recorded, defendants contend it was not legally enforceable. We agree. The face of the deed shows the recording tax imposed by Code Ann. § 92-164 (Ga. L. 1953, pp. 379, 383; 1955, pp. 288, 289) was not paid. Our Code provided: "[f]ailure to pay the tax levied by this law [§§ 92-161 through 92-814] shall constitute a bar to the collection of the indebtedness secured by any instrument required by this law to be recorded. . ." Code Ann. § 92-171 (Ga. L. 1953, pp. 379, 386); note subsequent statutes (Code Ann. §§ 91A-3202, 91A-3209) are inapplicable as they were codified following recordation of the security instruments at issue herein.

It is not contested that the recording tax was not paid. Neither can it be contested that the statute makes the deed to secure debt unenforceable where the tax was not paid. Thus, although the general warranty of title covenants the right of quiet enjoyment and of freedom from incumbrances (Code Ann. § 29-303 (Code § 29-303)), it is only "a covenant against the *valid* claims of all persons. . ." (Emphasis supplied.) Pindar, Ga. Real Est. Law 697, § 19-168 (see FN 654: "A purchaser cannot maintain an action for recovery of the purchase price because of a deed to another executed by one who has no title to the property. Such a deed is void and does not deprive him of his title.")

This court has held that where tax fi. fas. had been issued against the realty in question, after seven years they were dormant and could not be enforced, thus, "such dormant fi.fas. would not be an outstanding encumbrance, the redemption of which by the plaintiff would be a removal of an encumbrance for which the plaintiff would be entitled to recover for a breach of warranty in a deed to land."

*Weatherly v. Parr,* 74 Ga. App. 526 (4) (40 SE2d 445). The same rationale applies here. In *Weatherly* the plaintiff paid off the outstanding tax fi.fas. and brought suit against his grantor for breach of his general warranty. We found that neither the outstanding fi.fas. nor the tax deed was "sufficient to show an encumbrance of outstanding title." 74 Ga. App. 526 (3) (4), supra. In the instant case plaintiff paid off AGLC and brought this action against its grantors and predecessors in title for breach of warranty. The outstanding deed to secure debt was unenforceable so long as the recording tax remained unpaid and *at the time of plaintiff's compromise* with AGLC *it did not constitute a valid lien or encumbrance* upon the realty. Compare *Grant v. Oakey,* 108 Ga. App. 759, 762 (134 SE2d 449).

2. Although the deed to secure debt did not constitute a valid encumbrance, as pointed out above, this is not dispositive of the ultimate issue of breach of warranty of title — as the financing statement may also constitute a valid claim against the personalty affixed to the realty. Thus, the next issue to be resolved is the validity of the claim of lien represented by the UCC Financing Statement recorded in the personal property records of the Clerk of the Richmond Superior Court.

(a) We must first consider the effect of the filing of the UCC Financing Statement insofar as it relates to notice to the grantee — Pease & Elliman. As noted in the statement of facts, supra, even though the security agreement stated the collateral would not lose its identity as personalty, the UCC Financing Statement designated the collateral as fixtures, thereby passing with the realty. Apart from the question of physical attachment and removeability of the items, intent of the parties plays a major role in ascertaining whether the affixable items remain personalty or become a fixture, Pindar, Ga. Real Est. Law 359, Fixtures § 10-12; EGL 351, Fixtures § 3. Where, as here, we have contrary expressions of intent, the issue becomes one of fact to be determined by the jury. *Sawyer v. Foremost Dairy Products,* 176 Ga. 854 (2) (169 SE 115); Pindar, Ga. Real Est. Law 354, Fixtures § 10-5; see also Abraham, Ga. Real Estate Sales Contracts 47, § 6-1. This exact issue was before this court in *Babson Credit Plan v. Cordele &c. Assn.,* 146 Ga. App. 266, 269 (246 SE2d 354), and we held this to be an issue for the trier of fact. See also *Pendley Brick Co. v. Hardwick & Co.,* 6 Ga. App. 114 (1) (64 SE 664); *Aquafine Corp. v. Fendig Outdoor Adv. Co.,* 155 Ga. App. 661 (1) (272 SE2d 526). Accordingly, the trial court did not err in denying summary judgment to both parties and reserving this issue for the jury.

(b) We cannot reach a decision as to the effect of the filing of the UCC Financing Statement that the AGLC collateral was to be

attached to the realty as fixtures — until the jury determines the intent of the parties to the contract. *Babson Credit Plan v. Cordele &c. Assn.,* 146 Ga. App. 266, 269, supra.

3. Defendants contend that regardless of the decision of this court as to the foregoing, plaintiff is bound by the release granted to the law firm which researched the title for this property — who was a "joint tort-feasor." We do not agree. Plaintiff and its title insurance company entered into a "loan receipt" arrangement on March 27, 1974, whereby the title insurance company advanced to plaintiff the full amount they had paid to AGLC to discharge its claim of lien against the realty in issue. Thereafter, on August 1, 1978, the title insurance company reached a settlement agreement with the law firm which had researched the title for it, and for the sum of $25,000 released the law firm from "all claims, demands, damages, costs, expenses, actions or causes of action now or hereafter arising *ex delicto* or *ex contractu . . .* out of the employment by American Title Insurance Company" of the law firm. Defendants contend the law firm was a "joint tortfeasor" and as the title insurance company had taken full assignment of the cause of action from the plaintiff in the "loan receipt" the release of one joint tortfeasor released all joint tortfeasors. See *Weems v. Freeman,* 234 Ga. 575, 576 (216 SE2d 774).

Defendants' argument is ingenious — but incorrect. First, this court has held that a loan receipt preserves the right of action in the insured. *General Ins. Co. v. Bowers,* 139 Ga. App. 416, 418 (228 SE2d 348); Accord: *Southeast Transport Corp. v. Hogan Livestock Co.,* 133 Ga. App. 825 (1) (212 SE2d 638); *U. S. Fire Ins. Co. v. Farris,* 146 Ga. App. 177, 178 (245 SE2d 868); *American &c. Co. v. Brunson,* 157 Ga. App. 833, 834 (278 SE2d 719); see also 62 ALR3d 1111, 1129, § 5. Secondly, regardless of whether plaintiff reserved its cause of action, the crucial issue is whether the title company's law firm and defendants are joint tortfeasors. We find they are not. "The test for determining joint tortfeasors is set forth in *Mitchell v. Gilson,* 233 Ga. 453, 454 (211 SE2d 744). . ." *Zimmerman's, Inc. v. McDonough &c. Co.,* 240 Ga. 317, 320 (240 SE2d 864). The test is: " 'If the separate and independent acts of negligence of two or more persons or corporations combine naturally and directly to produce a single indivisible injury other than a nuisance, and if a rational basis does not exist for an apportionment of the resulting damages among the various causes, then the actors are joint tortfeasors, jointly and severally liable for the full amount of plaintiff's damages, notwithstanding the absence of voluntary intentional concert of action among them. . ." *Mitchell v. Gilson,* supra, at p. 454.

With the above test in mind, does the failure of a law firm's title researcher to find an improperly indexed deed to secure debt in the

personalty docket, or a UCC financing statement not cross-indexed to the realty docket amount to a negligent tort? See Code Ann. § 109A-9—401 (Ga. L. 1962, pp. 156, 413; 1963, pp. 188, 199).[1] If so, does the law firm for the title insurer become a joint tortfeasor with a grantor who breaches his warranty of title to a grantee? Pretermitting the issue of whether the law firm is negligent the answer is no. The tort is the breach of warranty. Causation for such breach of warranty lies solely at the hands of the defendants. The law firm's delict, if any, was the failure to detect the defendants' delict.

Although it is arguable that the law firm's failure to discover defendants' breach of its warranty contributed to the harm the plaintiff now knows to exist, it is clear that it is not a contributing cause to the original tort. For, if the law firm had discovered defendants' breach of warranty of title, the full and complete breach would still have been there, the same as it is today. The successive and independent acts of the law firm and the defendants did not coalesce to provide one injury. See ALI Restatement of the Law Second, Torts 2d, §§ 433A, 881. Each may have been "a cause" of an injury but a separate cause and logical distinction exist for apportionment of cause. Prosser, Torts (4th Ed.) 313, § 52. "Thus, an earlier tortfeasor may be liable for the damages inflicted by a later one, while the later wrongdoer is not liable for the earlier damage. . ." Prosser, Torts (4th Ed.) 298, § 47.

" 'It is a well established general rule that "where two or more persons or corporations, acting independently, without concert, plan, or other agreement, inflict a damage or cause an injury to another person, the persons inflicting the damage are not jointly liable therefore. . ." ' " *Gilson v. Mitchell,* 131 Ga. App. 321, 330 (205 SE2d 421). Our Supreme Court found *Gilson* "correctly states the law of Georgia on this subject. . ." *Mitchell v. Gilson,* 233 Ga. 453 (211 SE2d 744); see also *Sims v. Bryan,* 140 Ga. App. 69 (3) (230 SE2d 39). We find no joint tortfeasor relationship between the law firm and the defendants. See generally 73 ALR2d 403, 514 § 6.

4. The foregoing holdings also decide all enumerations in the defendants' cross appeal. In summary, we find that the trial court did not err in denying both motions for summary judgment.

*Judgments affirmed. McMurray, P. J., and Pope, J., concur.*

DECIDED SEPTEMBER 11, 1981 —
REHEARINGS DENIED OCTOBER 22, 1981 —

---

[1] We note the State Bar's Title Standards do not require the title examiner to search the personalty docket "unless specifically directed to do so by their client." State Bar of Georgia Title Standards 14.5, Code Ann. Ch. 85-2.

132

*Joseph R. Manning, Barry B. McGough, Richard P. Reinhart,* for appellant (case no. 61943).

*Aaron I. Alembik, Warren S. Shulman, Ruby C. Bell, Irwin W. Stolz, Jr., Seaton D. Purdom,* for appellees (case no. 61943).

*Irwin W. Stolz, Jr., Warren S. Shulman, Joycelyn L. Fleming, Ruby C. Bell, Seaton D. Purdom,* for appellants (case no. 61944).

*Aaron I. Alembik, Keith Bell, Barry B. McGough, Joseph R. Manning,* for appellee (case no. 61944).