A89A0495. HARGROVE v. JENKINS.
(383 SE2d 636)

BEASLEY, Judge.

Defendant Hargrove, a purchaser of real property from John Hancock Insurance Company, appeals from summary judgment to Jenkins, who purportedly purchased a shed on the property from the same seller. Jenkins sued in trover for the shed claiming title by sale on March 17, 1987. He alleged that on April 20 of that year John Hancock sold the land to Hargrove after notifying him of the sale of the shed, and that despite Hargrove's knowledge of Jenkins' ownership he refused to deliver the shed to Jenkins after repeated demands. The complaint sought possession of the shed plus lost profits and hire. Following discovery, Jenkins moved for summary judgment.

From the depositions of the two parties it appeared that Jenkins had inquired about purchasing the shed in January. Jenkins said he told Hargrove about this and that John Hancock was interested in

selling the land as well.

On March 2 Hargrove and John Hancock executed a contract for the purchase of the parcel. Two weeks later John Hancock received Jenkins' $1,000 check for the shed. The land sale closed on April 20. Neither the real estate sales contract nor the deed excluded the shed from the sale of the land or mentioned it.

Hargrove, Jenkins' housemate, related that a couple of days either before or after the real estate sales contract, Jenkins told him he was going to buy the shed and he told Jenkins the shed was left off the contract and "I assumed it was mine because it wasn't excluded from my contract." He admitted that he understood that John Hancock was "going to sell the tin" to Jenkins, but maintained that he was never informed that a sale had taken place.

The position of the two parties is this: Hargrove contends that jury questions remain as to whether the shed was severed from the realty and passed to Jenkins or whether it constituted a fixture and passed as realty. Jenkins contends that the intent of the parties to the contract controls and that his intent and that of John Hancock to sell the shed as personalty is conclusively shown.

Georgia law provides that "realty" or "real estate" includes lands and buildings thereon and all things permanently attached to lands and buildings. OCGA § 44-1-2 (1 & 2). *Wright v. DuBignon*, 114 Ga. 765, 768 (1) (40 SE 747) (1901). Trover will not lie to recover a building, considered as realty, which has not become personalty by being detached from the land. *Schrampfer v. Lindal Cedar Homes of Ga.*, 118 Ga. App. 92 (1) (162 SE2d 806) (1968). The term "fixtures" embraces all those chattels which by reason of their annexation to land partake both of the nature of personalty and realty, irrespective of whether they are removable. *Slater v. Dowd*, 79 Ga. App. 272, 274 (53 SE2d 598) (1949). OCGA § 44-1-6 (a). It is within the power of the vendor to detach fixtures before sale, or to reserve them by contract or deed. If he does not, the strict rule of the common law obtains and all fixtures actually or constructively annexed to the realty pass by conveyance of the freehold although it may describe only the land. *Wolff v. Sampson*, 123 Ga. 400 (1) (51 SE 335) (1905); Pindar, Georgia Real Estate Law, § 10-13. In *Brigham v. Overstreet*, 128 Ga. 447 (1) & (2) (57 SE 484) (1907), the court found a sugar-cane mill to be realty.

Where an item is attached to the land it becomes a part thereof and would ordinarily pass in a conveyance of the land. " 'Whether certain articles annexed to the realty shall pass by conveyance or not, as between grantor and grantee, may be controlled by the agreement of the parties.' " *Power v. Garrison*, 141 Ga. 429, 433 (81 SE 225) (1913). The parties may, by an extrinsic and collateral agreement to the instrument of conveyance, treat such articles as personalty or re-

alty. Id. at 432.

"[A]side from the general rule of physical attachment and removability, the intent of the parties is to be considered when deciding issues of the law of fixtures." *Babson Credit Plan v. Cordele &c. Assn.*, 146 Ga. App. 266, 268 (246 SE2d 354) (1978). See OCGA § 44-1-6. "[W]here there is a contract by the express or implied terms of which such fixtures are to be considered as personalty they will be so treated." *Wofford Oil Co. v. Weems-Fuller Co.*, 166 Ga. 173, 175 (3) (142 SE 887) (1928).

John Hancock exhibited contrary expressions of intent and an issue remains whether the property was reserved by the vendor with the consent of the vendee of the realty. So, the issue is one of fact to be determined by the jury. *Pease & Elliman Realty Trust v. Gaines*, 160 Ga. App. 125, 129 (2) (286 SE2d 448) (1981); *Sawyer v. Foremost Dairy Prods.*, 176 Ga. 854 (2) (169 SE 115) (1933).

Although one may contract to sell fixtures without severance, they are still part of the land and as real property interests cannot be defeated by such contracts. A buyer of fixtures intended to be severed would have to protect his rights by executing the sales contract as an instrument transferring interest in land. 12 EGL 366, Fixtures, § 23 (1977 Rev.), citing Brown, Personal Property, § 142 (a).

The sequence here is a real property sales contract for the land, followed by an oral contract for sale of the shed and execution to the extent that consideration passed but the property was not severed, and then the consummation of the real property sale. The evidence does not demand a finding as to what the selling party intended as to both sales and that a valid sale of the shelter as personalty had been completed before and to the exclusion of the real estate sale. See *Schrampfer*, supra. Nor does the proof conclusively show just what knowledge the parties possessed and precisely at what point such knowledge was acquired by each buyer. See *Powell v. Harris*, 39 Ga. App. 295 (147 SE 189) (1928).

*Judgment reversed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED JUNE 22, 1989.

*George W. Fryhofer*, for appellant.
*R. Hubert Reeves III*, for appellee.